605 So.2d 1064 (1992)
Theodore "Ted" L. JONES
v.
BOARD OF ETHICS FOR ELECTED OFFICIALS, et al.
No. 92-CA-0795.
Supreme Court of Louisiana.
October 19, 1992.
*1065 Thomas F. Wade, Roy A. Mongrue, Asst. Attys. Gen., for appellants.
John M. Tarver, Paul D. McKay, Jones & Tarver, H. Alston Johnson, III, Phelps Dunbar, R. Gray Sexton, Wilson & Sexton, Peter George Wright, Yvette L. Mansfield, Wade & Wade, John D. Ziober, Shockey & Ziober, for appellee.
Melvin G. Dakin, for Common Cause of La., amicus curiae.
MARCUS, Justice.
The Louisiana Legislature, in its 1991 Regular Session, enacted Act No. 755 to add provisions to the Code of Governmental Ethics regulating lobbying before the Louisiana Legislature and state agencies.
On December 30, 1991, Theodore "Ted" L. Jones brought this suit for declaratory and injunctive relief against the Board of Ethics for Elected Officials for the State of Louisiana and others[1] seeking to declare Act No. 755 unconstitutional and to enjoin its enforcement on the ground that the provisions of the act violated and infringed upon various constitutional rights including freedom of expression, association, privacy and equal protection under the federal and state constitutions. In his first amending petition, Jones sought to declare the act unconstitutional on the ground that the legislative process culminating in the passage of Act No. 755 violated art. III, §§ 15(C) and (D) of the Louisiana Constitution of 1974 pertaining to the passage of bills by the legislature.[2] The Association of Louisiana Lobbyists, Inc. intervened in the suit on the side of the plaintiff.
After a hearing, the trial judge held that Act No. 755 violated art. III, § 15(C) of the Louisiana Constitution, declared the act unconstitutional and enjoined its enforcement. The attorney general and the clerk of the House of Representatives appealed to this court for review of that decision.[3]
Act No. 755 began as Senate Bill 1040 on May 8, 1991.[4] As introduced the bill's title read:

AN ACT
To enact R.S. 42:1123(17), relative to the Code of Governmental Ethics; to permit licensed physicians to be appointed to and to serve on the boards of commissioners of hospital service districts; and to provide for related matters. [Emphasis added].
The bill was read a first and second time by title. It was assigned to and heard in the Committee on Senate and Governmental Affairs and reported to the full Senate on May 29th with amendments. On May 30th, the amendments were adopted by the Senate and the bill was engrossed and passed to a third reading. The bill was read by title and passed the Senate on June 4th.
Senate Bill 1040 was referred to the House on June 5, 1991, and read by title. On June 6th, it was again read by title and referred to the Committee on House and Governmental Affairs. On June 19th, the committee heard the bill and made some technical changes to the title and body. It was read by title on June 21, 1991, and *1066 ordered placed on the calendar for a third reading. On July 3rd, it was read to the House by title. Floor amendments from the House amended the title of Senate Bill 1040 to read:
AN ACT
To amend and reenact R.S. 42:1132(C) and to enact Parts V and VI of Chapter 15 of Title 42 of the Louisiana Revised Statutes of 1950, to be comprised of R.S. 42:1191 through 1202 and R.S. 42:1211 through 1221, and to repeal Part III of Chapter 1 of Title 24 of the Louisiana Revised Statutes of 1950, comprised of R.S. 24:51 through 55, and Part IV of Chapter 1 of Title 49 of the Louisiana Revised Statutes of 1950 comprised of R.S. 49:71 through 76, relative to the Code of Governmental Ethics; to provide for regulation of lobbying; to provide for definitions; to provide for registration, reporting, and records; to prohibit certain conduct; to prohibit contributions under certain circumstances; to provide for identification badges; to provide for administration and enforcement; to provide for penalties for violations; and to provide for related matters. [Emphasis added].
The body of the bill was amended to conform with the amended title by deleting the provisions pertaining to physicians serving on the boards of commissioners of hospital service districts and adding provisions relating to lobbying which form the present body of Act No. 755.[5] After the amended version of the bill was read, as a point of order, Representative Jenkins asked for a ruling from the Chair as to whether the amendments were germane to the subject matter contained in the bill as introduced. The Chair ruled that the amendments were germane. When Representative Jenkins appealed the ruling, a vote was ordered and taken, sustaining the ruling of the Chair by a vote of 72 to 14 with 19 house members absent. The amendments were then adopted by a vote of 71 to 27 and the bill was passed by a vote of 82 to 17 with 6 members absent.[6]
On the same date (July 3rd), Senate Bill 1040 was referred to the Senate with the House amendments. In the Senate, the vote was on concurrence, that is, whether to accept the changes in the bill made in the House. The bill was read by title before the Senate on July 5th and returned to the calendar. On July 8th, the bill was again read by title and the House amendments were read and concurred in by a vote of 23 to 5 with 10 members absent. After the vote, four senators stated they had intended to vote in favor of the amendments and asked that the Official Journal so statethus the actual vote was 27 to 2 in favor of concurrence. On the same date, Senate Bill 1040 was signed by the President of the Senate and the Speaker of the House and sent to the Governor in its present form.[7] It was signed into law on July 18, 1991.
Art. III, § 15 pertains to the passage of bills by the legislature.
Section 15(C) provides:
No bill shall be amended in either house to make a change not germane to the bill as introduced.
The narrow issue before us is whether the amendments to Senate Bill 1040 which added provisions to the Code of Governmental Ethics concerning the regulation of lobbying were germane to the bill as introduced which provided an exception to the Code of Governmental Ethics pertaining to physicians serving on the boards of commissioners of hospital service districts. For the reasons set forth below, we find the amendments are germane to the bill as introduced and therefore no violation of La.Const. art. III, § 15(C) has occurred.
*1067 This case requiring the interpretation of art. III, § 15(C) is one of first impression in our court. A similar provision relative to constitutional amendments was added to the 1921 Constitution by La.Acts No. 552 of 1958 and became La.Const. art. III, § 8.1 which provided in pertinent part that "no bill or joint resolution proposing to amend the constitution introduced into either house of the Legislature shall be amended by either house ... if such committee or floor amendment or procedure followed will effect the substitution of an entirely new subject matter or make a change not germane to the bill or joint resolution proposing to amend the constitution as introduced originally...." [Emphasis added].
Statutes are presumed to be constitutional. Bristol Steel & Iron Works, Inc. v. State, Dept. of Transp. & Dev., 507 So.2d 1233 (La.1987). La.Const. art. III, § 15(C) must be construed broadly rather than narrowly with the view of effectuating, not frustrating, the legislative purpose. See Ricks v. Dept. of State Civil Service, 200 La. 341, 8 So.2d 49 (1942).
Other states have constitutional provisions similar to that of § 15(C). For example, art. IV, § 61 of the Constitution of Alabama of 1901 provides in pertinent part that "no bill shall be so altered or amended on its passage through either house as to change its original purpose." The "purpose" of a bill within this section has been defined to mean its general purpose, not mere details through which its purpose is manifested and effectuated. Opinion of the Justices, 383 So.2d 527 (Ala.1980); See also Westin Crown Plaza Hotel Co. v. King, 664 S.W.2d 2 (Mo.1984) (purpose defined similarly when interpreting an almost identical constitutional provision). The word "purpose" is used in the constitutions of other jurisdictions like the word "germane" is used in § 15(C) of our constitution. Black's Law Dictionary defines "germane" as "in close relationship, appropriate, relative, pertinent."[8]
Original Senate Bill 1040 proposed to enact a new section, La.R.S. 42:1123(17), relative to the Code of Governmental Ethics, (La.R.S. 42:1101 et seq.), to add a provision regulating physicians, allowing them to serve as members of boards of commissioners of hospital service districts. The amended version deleted La.R.S. 42:1123(17)[9] but proposed to enact two new subsections to R.S. 42:1101 et seq. (La.R.S. 42:1191 through 1202 and 42:1211 through 1221) relative to the Code of Governmental Ethics regulating the acts of lobbyists in relation to state legislators and state agencies. The amended version is relevant or pertinent to the bill as introduced because both versions of the bill serve to effectuate the policy of the Code of Governmental Ethics in determining which persons are to be regulated in the private sector in their dealings with public servants. Both versions of the bill seek to increase the level of public confidence in the integrity of government which is the central theme of the Code of Governmental Ethics. Very simply put, since both versions of the bill are related to the Code of Governmental Ethics and since both versions of the bill sought to add provisions to that Code, we conclude that the amended bill is germane to the bill as introduced.
We also note that the Code of Governmental Ethics contained provisions affecting lobbying activities prior to the enactment of Act No. 755. La.R.S. 42:1115(A)(2) provides that "no public servant shall solicit or accept, directly or indirectly, anything of economic value as a gift or gratuity from any person ... if such public servant knows or reasonably should know that such person is seeking, for compensation, to influence the passage or defeat of legislation by the public servant's agency." Hence, we conclude that amended Senate Bill 1040 would logically fit within the Code of Governmental Ethics.
We are mindful that when a bill has been through the legislative process such as that described herein, it is to be expected that the legislation that emerges from such a *1068 process may differ from the original bill as introduced. However, when, as in the instant case, the bill as introduced and the amended version are found to be germane, a finding of constitutionality under article III, § 15(C) is required.
Accordingly, the trial judge erred in declaring that Act No. 755 of the 1991 Regular Session of the Louisiana Legislature violated La.Const. art. III, § 15(C). We must reverse.

DECREE
For the reasons assigned, the district court judgment declaring Act. No. 755 of the 1991 Regular Session of the Louisiana Legislature unconstitutional as violative of article III, § 15(C) of the Louisiana Constitution and enjoining its enforcement is reversed. The case is remanded to the district court to consider the remaining issues raised by plaintiff in his petition. All costs are assessed against plaintiff.
COLE, J., concurs with reasons.
LEMMON, J., dissents and assigns reasons.
COLE, Justice, concurs with reasons.
I concur with the Court's opinion that there was no violation of La.Const. art. III, § 15(C) in the enactment of Act No. 755 of the 1991 Regular Session of the Louisiana Legislature. This finding of constitutionality on that narrow ground, however, should in no way prevent the district court on remand from examining the Act to determine whether other constitutional rights are violated or infringed upon, including the parties' First Amendment rights of freedom of expression, association, and privacy.
LEMMON, Justice, dissenting.
A bill to regulate lobbying under the Code of Governmental Ethics is not germane to, and does not have the same purpose as, a bill to permit licensed physicians to serve on the boards of hospital service districts under the same Code of Governmental Ethics. While both bills concerned the Code of Governmental Ethics, there is entirely no relationship between doctors on hospital boards and legislative lobbyists. The amendment regulating lobbying was no more germane to the original bill than an amendment abolishing capital punishment (under La.Rev.Stat. 14:30 C) would be to a bill revising the method of citing the Louisiana Criminal Code (under La.Rev. Stat. 14:1), although both sections are part of the same chapter of the Revised Statutes.[1] Moreover, the amendment was not germane enough to the original act so that it could have been incorporated in the original act under the same title. Compare A & M Pest Control Service v. La Burre, 247 La. 315, 170 So.2d 855 (1965).
The purpose of La.Const. art. III, § 15C was to do away with the practice of using a floor amendment to gut entirely an existing bill on one subject matter and replace the body of the bill with an unrelated subject matter that has not been exposed to the public scrutiny and input that goes with readings and committee hearings on an original bill.[2] If that purpose is unimportant, then the Constitution should be amended rather than ignored.[3] Until the Constitution is changed, amendments should be restricted to those which are true amendments and not substitute bills.
NOTES
[1] Other state officials made defendants were Michael S. Baer, III, Secretary of the Senate, Alfred W. Speer, Clerk of the House of Representatives, and Walter F. McKeithen, Secretary of State.
[2] By a second amending petition, Jones sought to amend the suit to a class action on behalf "of all persons, natural or artificial, who fall within the definition of lobbyist" within Act No. 755 and to add William Guste, Attorney General of the State of Louisiana, as a party defendant.
[3] This court has appellate jurisdiction in all cases in which a law of this state has been declared unconstitutional. La.Const. art. V, § 5(D)(1).
[4] 1991 Legislative Calendar, Vol. 2, Senate Bill No. 1040, p. 1056.
[5] La.Const. art. III, § 15(A) provides in pertinent part that every bill "shall be confined to one object" and "shall contain a brief title indicative of its object." There is no dispute that the amended bill is confined to one object and contains a title indicative of its object.
[6] 1991 Official Journal, House of Representatives of the State of Louisiana, Vol. 4, July 3, 1991, pp. 10-18.
[7] 1991 Official Journal of the Senate of the State of Louisiana, Vol. 4, July 8, 1991, pp. 18-25.
[8] Black's Law Dictionary, p. 687 (6th Ed.1990).
[9] This provision was enacted through another bill.
[1] See also Casey v. Southern Baptist Hospital, 526 So.2d 1332 (La.App. 4th Cir.1988) (an amendment to disallow strict liability against health care providers for contraction of undetectable viral disease through use of blood was not germane to original bill to extend immunity to a professional medical corporation for gratuitiously rendering emergency care).
[2] The public cannot address the full Legislature, and the committee hearing is the only opportunity for the public to address legislative meetings.
[3] The Constitution should be honored, regardless of the merits of the amendment passed in violation of the Constitution.