655 So.2d 394 (1995)
Armand J. BRINKHAUS, in His Capacity as a Member of the Louisiana Senate, and Ron J. Landry, in His Capacity as a Member of The Louisiana Senate
v.
The SENATE OF the STATE OF LOUISIANA, and The Honorable Samuel J. Nunez, In His Capacity as President of The Louisiana Senate.
No. 95 CA 0647.
Court of Appeal of Louisiana, First Circuit.
April 18, 1995.
*395 Karl J. Koch and Michael S. Baer, III, Baton Rouge, for defendant-appellant State of La.
Armand J. Brinkhaus, Sunset, in pro. per.
Ron J. Landry, LaPlace, in pro. per.
Before LOTTINGER, C.J., and SHORTESS, CARTER, LEBLANC and WHIPPLE, JJ.
LOTTINGER, Chief Judge.
This action is a suit by two Louisiana State Senators, the Honorable Armand J. Brinkhaus and the Honorable Ron J. Landry,[1] for declaratory judgment to ascertain whether or not certain proposed legislation that was pre-filed can be properly introduced at the 1995 Regular Legislative Session. Named as defendants were the Senate of the State of Louisiana (Senate) and the Honorable Samuel J. Nunez (Senator Nunez), in his capacity as President of the Louisiana Senate. The trial court held that several proposed senate bills could not be introduced or enacted, but that Senate Bill 123 may be introduced and enacted during the 1995 Regular Legislative Session. The Senate and Senator Nunez appeal the judgment of the trial court as to Senate Bill 123, and Senators Brinkhaus and Landry answer the appeal as to the other proposed senate bills which were declared could not be introduced or enacted.
Senators Brinkhaus and Landry as well as other members of the Senate pre-filed certain bills.[2] Senator Nunez acting as President of the Senate transmitted a letter to the authors of the bills, including Senators Brinkhaus and Landry, declining to provisionally refer the bills to committees and informing them the bills could not be introduced pursuant to Article 3, Section 2 of the Louisiana Constitution as amended.[3]
*396 This suit was filed on March 17, 1995, the hearing in the trial court was held on March 21, judgment was signed on March 23, and the legislature convened into session on March 27. Though not part of the record, we were informed during oral argument that the subject bills were introduced in the Senate on the opening day of the session, but they were not referred to committee. These bills are presently on the Senate calendar awaiting further action.

I
Irrespective of this suit seeking a declaratory judgment (1) by two state senators seemingly conferring jurisdiction on the courts to hear this matter, (2) an answer filed by the Senate and Senator Nunez admitting Senators Brinkhaus and Landry have standing, and (3) all parties agreeing that a declaratory judgment is appropriate in this case because it presents an actual "controversy" between the parties, we conclude ex proprio motu that the courts lack subject matter jurisdiction in this matter. La.Code Civ.P. art. 3. Thus, the trial court erred in entertaining and deciding this matter. La.Code Civ.P. art. 925. History tells us that the "consent of parties cannot give jurisdiction to a court, when it is wanting ratione materie," Fleming v. Hiligsberg, 11 Rob. 77 (1845) and Dupey v. Greffin, 1 Mart. N.S. 198 (1823), and the court is bound to notice the lack of jurisdiction ex officio, Greiner v. Thielen, 6 Rob. 365 (1845) and Kerr v. Kerr, 14 La. 177 (1839), at any point in the proceedings. Lafon's Executors v. Lafon, 1 Mart.N.S. 703 (1823).

II
La. Const. Art. II, §§ 1 and 2 divide the governmental powers of the State of Louisiana into three separate branches and further provide that "no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others."
La. Const. Art. III, § 7(A) in part provides that "[e]ach house ... shall determine its rules of procedure, not inconsistent with the provisions of this constitution." The Senate has adopted a comprehensive set of rules under which it operates and has adopted by reference Mason's Manual of Legislative Procedure (1989) as its guide where its own rules do not provide an answer. Rule 15.3 of the Rules of Order of the Louisiana Senate provides that "[o]n any question of order and parliamentary practice, when these rules are silent or inexplicit, Mason's Manual of Legislative Procedure shall be considered as authority." We note that contained in the Rules of Order of the Louisiana Senate as well as in Mason's Manual of Legislative Procedure are found appropriate legislative parliamentary motions which can be used *397 when a presiding officer is reluctant or refuses to allow the introduction of legislation or the referral thereof to committee.[4] We venture not to suggest the motions available, because to do so would interject this court into the business of the Senate in violation of the separations of powers provision of the constitution. However, the failure to utilize procedures available is not dispositive of the issue in this proceeding, i.e. lack of subject matter jurisdiction.

III
The basis of Senator Nunez's ruling is the application or interpretation of La. Const. Art. III, § 2(A)(2). This suit prays that "a declaratory judgment issue herein determining whether or not the proposed bills can be properly introduced." Or, stated another way, this suit asks the courts for all intents and purposes to overrule the ruling of Senator Nunez, and we must assume if Senator Nunez's ruling had been appealed to the Senate and sustained, we would be asked to overrule the Senate.
The ruling of Senator Nunez which is the basis of the "controversy" and the resolution thereof is a matter which properly belongs within the legislative branch of the government, and in this case within the Senate. Though this suit is couched in terms of interpreting a particular constitutional provision, the purpose of the suit is to correct an alleged erroneous procedural ruling of the President of the Senate. The legislative branch has the constitutional authority to adopt rules for the operation of each house of the legislature. The Senate has adopted rules of procedure including a means of appealing adverse rulings. For the judicial branch to entertain such a suit, the judicial branch would be exercising a power belonging to the legislative branch of state government, and this we cannot and will not do. La. Const. Art. II, § 2.
We see no difference in the instant "controversy" from a "controversy" involving proposed legislation pre-filed during an even-numbered "fiscal" session, La. Const. Art. III, § 2(A)(3), which attempts to enact general non-fiscal legislation. A parliamentary ruling disallowing the introduction follows, and suit is filed for an interpretation of the appropriate constitutional provision. Nor do we see any difference between a controversy between legislators when they interpret constitutional provisions differently and seek guidance through the declaratory judgment procedure to have the courts settle their "controversy."
Will a single interpretation of this constitutional provision in the context of the ruling complained of settle or decide future similar adverse rulings by the President of the Senate or the Speaker of the House of Representatives? We think not. Would an interpretation of the constitution vis a vis specific proposed legislation be binding on future litigation, and what if the proposed legislation is amended during the legislative process? The answers are too many, and they are certainly not definitive.
In oral argument defendants-appellants argue that the courts undertook to interpret the constitution and advise the legislative branch in Jones v. Board of Ethics for Elected Officials, 605 So.2d 1064 (La.1992) and Henry v. Edwards, 346 So.2d 153 (La.1977). In each of these cases, the legislation at issue had already been enacted and was then being challenged on constitutional grounds. In Jones the issue was the constitutionality of an act of the legislature based on whether an amendment was germane, whereas in Henry the issue was the constitutionality of gubernatorial veto power vis a vis substantive language in the general appropriations bill.

IV
If we entertain such litigation as presently before us, the judicial branch will find itself *398 involved in the daily operations of the legislative branch settling "controversies" between the presiding officers of either house and the members thereof as well as controversies between legislators themselves. We would end up as a "super" senate or a "super" house of representatives, and the judicial branch would be in violation of Art. III, §§ 2 and 7(A) of the Louisiana Constitution. We are convinced that under the Louisiana Constitution this matter properly belongs in the legislative branch of government.
Therefore, for the above and foregoing reasons, the judgment of the trial court is reversed, and the petition is dismissed at plaintiffs' costs.
REVERSED AND RENDERED.
NOTES
[1] Senator Brinkhaus represents the 26th Senatorial District and Senator Landry represents the 19th Senatorial District.
[2] The proposed senate bills are Senate Bills 9, 17, 33, 37, 49, 61, 70, 82, 83, 187, 246, 248, 267, 275, 279, 302, 303, 304, 314 and 332.
[3] As amended by Act 1041 of 1993, Article III, § 2(A) was amended to read:

Section 2. (A)(1) Annual Session. The legislature shall meet annually in regular session for a limited number of legislative days in the state capital. A legislative day is a calendar day on which either house is in session. Any bill to be introduced in either house shall be prefiled no later than five o'clock in the evening of the Friday before the first day of a regular session; thereafter no member of the legislature may introduce more than five bills, except as provided in the joint rules of the legislature. The legislature is authorized to provide by joint rule for the procedure for passage of duplicate or companion instruments.
(2) All regular sessions convening in odd-numbered years shall be general in nature and shall convene at noon on the last Monday in March. The legislature shall meet in such a session for not more than sixty legislative days during a period of eighty-five calendar days. No such session shall continue beyond six o'clock in the evening of the eighty-fifth calendar day after convening. No new matter intended to have the effect of law shall be introduced or received by either house after midnight of the thirtieth calendar day. No matter intended to have the effect of law, except a measure proposing a suspension of law, shall be considered on third reading and final passage in either house after midnight of the fifty-fifth legislative day of a regular session, except by a favorable record vote of two-thirds of the regular members of each house. No measure levying or authorizing a new tax by the state or by any statewide political subdivision whose boundaries are coterminous with the state, increasing an existing tax by the state or by any statewide political subdivision whose boundaries are coterminous with the state, or legislating with regard to tax exemptions, exclusions, deductions or credits shall be introduced or enacted during a regular session held in an odd-numbered year.
(3) All regular sessions convening in even-numbered years shall convene at noon on the last Monday of April. Each session shall be restricted to the consideration of legislation which provides for enactment of a general appropriations bill, implementation of a capital budget, for making an appropriation, levying or authorizing a new tax, increasing an existing tax, legislating with regard to tax exemptions, exclusions, deductions, reductions, repeal, or credits, or issuing bonds. The legislature shall meet in such a session for not more than thirty legislative days in a period of forty-five calendar days, no such session shall continue beyond six o'clock in the evening of the forty-fifth calendar day after convening. No new matter intended to have the effect of law shall be introduced or received by either house after midnight of the tenth calendar day. No matter intended to have the effect of law, except a measure proposing a suspension of law, shall be considered on third reading and final passage in either house after midnight of the twenty-seventh legislative day of a regular session, except by a favorable record vote of two-thirds of the elected members of each house.
[4] Pursuant to Mason's Manual of Legislative Procedure, § 230, "[t]he proper method of taking exception to a ruling of a presiding officer is by appeal." Stated another way, Senators Brinkhaus and Landry as well as the other senators affected by Senator Nunez's ruling could have appealed Senator Nunez's ruling to the entire Senate. On a motion to overrule the chair, the Senate could either sustain or overrule the ruling of Senator Nunez. There is no indication that either Senator Brinkhaus or Senator Landry or any other affected senator appealed the ruling of Senator Nunez.