670 So.2d 475 (1996)
In the Matter of RUBICON, INC.
No. 95 CA 0108.
Court of Appeal of Louisiana, First Circuit.
February 14, 1996.
Order Denying Rehearing March 29, 1996.
*477 Daria Burgess Diaz, Charles Ellis, New Orleans, for Appellant Louisiana Environmental Action Network and Ascension Parish Residents Against Toxic Pollution.
Gordon Green, Meredith Hoag Lieux, Ph. D., Baton Rouge, for Appellee Louisiana Dept. of Environmental Quality.
Steven J. Levine, Sheila T. Walet, New Orleans, for Rubicon, Inc.
Before LOTTINGER, C.J., and WATKINS, SHORTESS, CARTER, LEBLANC, FOIL, GONZALES, WHIPPLE, FOGG, PITCHER, PARRO, FITZSIMMONS and KUHN, JJ.
LOTTINGER, Chief Judge.
Appellants, Louisiana Environmental Action Network and Ascension Parish Residents Against Toxic Pollution (hereinafter collectively referred to as LEAN), appeal a decision of the Department of Environmental Quality (DEQ) granting an exemption to Rubicon, Inc. (Rubicon) from Louisiana's ban on the land disposal of hazardous waste.

FACTS AND PROCEDURAL HISTORY
Rubicon operates four injection wells at its facility in Ascension Parish, Louisiana near Geismar. These underground injection wells are used for the disposal of hazardous waste generated by Rubicon's operations.
Louisiana law prohibits the deep well injection of hazardous waste unless an exemption is granted by the DEQ. See La.R.S. 30:2193. In 1992, Rubicon submitted a petition to the DEQ requesting an exemption from the land disposal ban. On September 21, 1994, the DEQ granted an exemption in favor of Rubicon allowing the continued use of the underground injection wells. LEAN appealed this decision on October 21, 1994. Jurisdiction to review the decision was vested in this court pursuant to La.R.S. 30:2024(C).[1]
Subsequent to the filing of this appeal, Act 1208[2] of the Regular Session of 1995 was *478 enacted by the Louisiana Legislature. The act transfers appellate jurisdiction of final DEQ decisions from the First Circuit Court of Appeal to the Nineteenth Judicial District Court and provides for the payment of witness fees to law enforcement officers subpoenaed in certain administrative proceedings.
Act 1208 was prefiled in the House as House Bill No. 2117 on March 24, 1995. On March 27 it was read by title and referred to the House Committee on Natural Resources. On April 27 it was reported with amendments. The committee amended the bill to add Section 4 providing that "[t]he provisions of this Act shall be procedural law in accordance with Civil Code Article 6." It was passed by the House on May 17. It was subsequently received by the Senate, referred to and reported favorably by committee without amendments. It passed the Senate *479 on June 13 without any amendments and was signed by the governor on June 29.

I. JURISDICTION
Following the enactment of Act 1208, Rubicon filed a motion for determination of jurisdiction requesting that this court address the issue of whether it maintains subject matter jurisdiction over DEQ appeals. At oral argument the issue of jurisdiction was addressed by the parties prior to hearing arguments on the merits of this case. The parties also filed post-hearing memorandum on the jurisdiction issue. DEQ, Rubicon and LEAN challenge the constitutionality of the act on two grounds: (1) the act does not confine itself to a single object as required by La. Const. art. III, § 15(A); and (2) the body of the act is broader than its title in violation of La. Const. art. III, § 15(A).

A. CONSTITUTIONAL ISSUE RAISED FOR THE FIRST TIME ON APPEAL
Generally, a litigant must attack the constitutionality of a statute at the trial level before it will be considered by an appellate court. Vallo v. Gayle Oil Company, Inc., 94-1238, p. 8 (La. 11/30/94); 646 So.2d 859, 864. The unconstitutionality of the statute must be specially pleaded and the grounds for the claim particularized. Id. at 864-65. However, several exceptions to this general rule have been recognized.[3] One such exception is when the challenged statute becomes effective after an appeal is lodged in a higher court. Vallo, 646 So.2d at 864 n. 9; State v. Wright, 305 So.2d 406, 409 (La.1974) (Summers, J., dissenting); Summerell v. Phillips, 258 La. 587, 247 So.2d 542, 546 n. 5 (1971); Long v. Northeast Soil Conservation District of Louisiana, 226 La. 824, 77 So.2d 408, 410 (1954). When a statute becomes effective after the lodging of an appeal, it is impossible for the claimant to plead its unconstitutionality in the lower court. Long, 77 So.2d at 410. Under such circumstances, it would be unreasonable for an appellate court to refuse to consider a plea of unconstitutionality which was necessarily raised for the first time on appeal. Id.
We are aware that the constitutionality of Act 1208 is challenged for the first time on appeal. However, considering the aforementioned exception and the motion for determination of jurisdiction, it is proper for this court to address the constitutional issue because Act 1208 became effective after the lodging of this appeal.
For the reasons which follow, we conclude that Act 1208 is unconstitutional as it violates the one object requirement of La. Const. art. III, § 15(A).

B. THE ONE OBJECT REQUIREMENT
Article III, § 15(A) of the Louisiana Constitution provides in pertinent part that "[e]very bill ... shall be confined to one object."[4] The purpose behind the one object requirement is to restrict the content of a legislative bill so as to prevent a legislator from having to consider two or more unrelated matters when deciding how to vote on a single bill. Doherty v. Calcasieu Parish School Board, 93-3017 (La. 4/11/94); 634 So.2d 1172, 1175-76; Bazley v. Tortorich, 397 So.2d 475, 485 (La.1981).
A bill is considered to have one object if the parts of the bill are reasonably related and have a natural connection to the general subject matter of the legislation. Doherty, 634 So.2d at 1176; Bazley, 397 So.2d at 485. The object of a bill has been defined as the aim or purpose of the enactment; its general purpose; or the matter or thing forming the groundwork of the bill. Airey v. Tugwell, 197 La. 982, 3 So.2d 99, 102 (1941). To determine whether a bill is confined to one object, it is necessary to first examine the body of the bill to ascertain its purpose. *480 State v. O'Dell, 253 La. 418, 218 So.2d 318, 319 (1969).
Upon examining the body of Act 1208, it is clear that it contains two distinct objects. Section one of the act provides for witness fees for law enforcement officers subpoenaed by the Department of Public Safety and Corrections or by the DEQ. The provisions of section one are related and accomplish one object, namely the providing of witness fees in connection with proceedings by various state agencies. In contrast, section two of the act is in no way related to witness fees. This section eliminates the jurisdiction of the First Circuit Court of Appeal to review final decisions of the DEQ and transfers that jurisdiction to the Nineteenth Judicial District Court. The object of this section, which is to change appellate jurisdiction of DEQ decisions, is unrelated to the object of section one.
The two objects of Act 1208 are separate and distinct, and by including them in one bill, the legislature contravened the requirements of Article III, section 15(A) of the state constitution. The act is an example of the type of bill that the constitution sought to eliminate. It forces legislators to consider unrelated objects and then to vote on all of them at one time. Because Act 1208 is not confined to one object, it violates the one object requirement of the state constitution.
Violation of the one object requirement does not necessarily invalidate an entire act. When the title of an act expresses only one object, while its body sets forth two objects, the court must restrict its declaration of nullity to the object of the act which is not expressed in the title. Orleans Parish School Board v. City of New Orleans, 410 So.2d 1038, 1040 (La.1982); State v. Ferguson, 104 La. 249, 28 So. 917, 919 (1900). However, if the title of the act expresses, and the body of the act embraces, two distinct objects, the entire act must be declared null, as the court may not choose between the two objects, holding one valid and one void. Ferguson, 28 So. at 919.
In the present case, the two objects embraced by the body of Act 1208 are also expressed in its title. The title states, in part, that the act will "provide for payment of witness fees to law enforcement officers subpoenaed in certain administrative proceedings" and "provide for appeal of final enforcement or permit action." Because the title of the act and the act itself embrace two distinct objects, we are constrained to hold the entire act invalid.
Because we declare Act 1208 unconstitutional in its entirety because of the one object violation, we pretermit any discussion of the issue that the body is broader than the title.

C. THE FIRST CIRCUIT RETAINS JURISDICTION
Having declared the act unconstitutional, we now discuss application of our decision to pending DEQ appeals.
During the Regular Session of 1995, the Legislature enacted two acts which addressed the issue of judicial review of DEQ decisions: Acts 1208 and 947. Under Act 1208, jurisdiction over DEQ appeals was to be transferred to the Nineteenth Judicial District Court on June 29, 1995, the effective date of the act. Act 947 § 1 provided that "[a]n aggrieved person may appeal devolutively a final permit action, a final enforcement action, or a declaratory ruling only to the Court of Appeal, First Circuit." The act went on to provide in Section 8 that "[i]f the provisions of [Act 1208] providing that review of final decisions or orders of the Department of Environmental Quality are to be appealed to the Nineteenth Judicial District Court ... instead of the Court of Appeal, First Circuit, become effective, then ... this Act [is] hereby amended to specify that such decisions or orders are to be appealed to said district court." Act 947 became effective on January 1, 1996.
Generally, when a statute is declared unconstitutional it is void ab initio and all acts done under such statutes are void and of no effect. Magee v. Landrieu, 95-0437, 95-0438, 95-0474, p. 6 (La.App. 1st Cir. 3/17/95); 653 So.2d 62, 65, writs denied, 95-0790, 95-0800, 95-0805, 95-0870 (La. 4/21/95); 654 So.2d 319, 320. However, where it would be:
unequitable to follow the general rule that an unconstitutional statute was void ab *481 initio and without any legal effect whatsoever, or where it was impossible for the court to undo what had transpired under an unconstitutional statute and to restore the parties to some reasonable position, the courts have recognized exceptions to the rule as a matter of public policy or necessity in such instances.
Smith v. Lincoln Parish Police Jury, 327 So.2d 641, 644 (La.App. 2nd Cir.1976) (quoting Flournoy v. First Nat. Bank of Shreveport, 197 La. 1067, 3 So.2d 244 (La.1941)).
The circumstances in this case do not warrant an exception to the general rule. This is one of the first DEQ appeals to come before this court since Act 1208 was enacted.[5] To date, no DEQ appeals have been transferred to the Nineteenth Judicial District Court.[6] There are no pending appeals which would be adversely affected by declaring Act 1208 unconstitutional and void ab initio.
When an act is declared void ab initio it has no legal effect whatsoever. Id. Because Act 1208 is void ab initio and without legal effect, that portion of Act 947 which would amend Section 1 and transfer jurisdiction to the district court is not activated. Thus, appellate jurisdiction over DEQ decisions is maintained in the First Circuit Court of Appeal through Act 947 § 1.

II. ADEQUACY OF DEQ'S DECISION
LEAN raised three assignments of error in its appeal of the DEQ's decision to grant Rubicon an exemption from the ban on the land disposal of hazardous waste.[7] While the adequacy of the DEQ's decision was not raised as a specific assignment of error, LEAN suggests within its argument on the third assignment of error, that the DEQ did not fulfill its duty as public trustee of the environment because it failed to detail its findings in the final decision granting the exception.
Although the adequacy of the final decision was not raised as a specific assignment of error, the issue is properly before this court. Under the state constitution, we, as the reviewing court of all final DEQ decisions, have a duty to protect the environment "insofar as possible and consistent with the health, safety, and welfare of the people." La. Const. art. IX, § 1. To fulfill this constitutional duty, we must review final decisions of the DEQ to ensure that they comport with applicable constitutional, statutory and regulatory requirements. Regardless of whether the adequacy of a decision is raised as a specific assignment of error, we may address this issue when necessary to fulfill our constitutional duty.
In February, 1992, Rubicon submitted its exemption petition to DEQ. After the required public comment period, the exemption was granted by a letter signed by Glenn A. Miller, Assistant Secretary of DEQ, and dated September 21, 1994. Attached to the letter were twelve conditions Rubicon was required to meet and a brief summary of DEQ's response to three issues which had *482 been raised during the public comment period.
The duties of the Secretary of DEQ were succinctly stated by the Louisiana Supreme Court in Save Ourselves, Inc. v. Louisiana Environmental Control Commission, 452 So.2d 1152, 1157 (La.1984), wherein the court held:
The agency is required to use a systematic, interdisciplinary approach to evaluation of each hazardous waste project or facility. In determining whether the proposed project fully minimizes adverse environmental effects, the commission [DEQ] necessarily must consider whether alternate projects, alternate sites, or mitigative measures would offer more protection for the environment than the project as proposed without unduly curtailing non-environmental benefits. (Citation omitted).
This statement has since been referred to as the "IT Decision" and in Blackett v. Louisiana Department of Environmental Quality, 506 So.2d 749, 754 (La.App. 1st Cir.1987), we summarized the Secretary's considerations into five categories:
First, have the potential and real adverse environmental effects of the proposed facility been avoided to the maximum extent possible? Second, does a cost benefit analysis of the environmental impact costs balanced against the social and economic benefits of the proposed facility demonstrate that the latter outweighs the former? Third, are there alternative projects which would offer more protection to the environment than the proposed facility without unduly curtailing non-environmental benefits? Fourth, are there alternative sites which would offer more protection to the environment than the proposed facility site without unduly curtailing non-environmental benefits? Fifth, are there mitigating measures which would offer more protection to the environment than the facility as proposed without unduly curtailing non-environmental benefits?
In In the Matter of American Waste and Pollution Control Co., 93-3163, p. 18 (La. 9/15/94); 642 So.2d 1258, 1265-66, the supreme court set forth the standard of judicial review to be employed by a reviewing court for an appeal of a decision of the DEQ Secretary:
In Save Ourselves, the standard of judicial review provided by LSA-R.S. 49:964 was applied by analogy to the quasi-judicial decisions of the DEQ Secretary.
"Pursuant to § 964, a reviewing court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (6) manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record." Save Ourselves, 452 So.2d at 1158.
On review, a court should not reverse a substantive decision of DEQ on its merits unless it can be shown that the Secretary was arbitrary or clearly gave insufficient weight to environmental protection in balancing the costs and benefits of the proposed action. The court must reverse if the decision was reached "without individualized consideration and balancing of environmental factors conducted fairly and in good faith." Save Ourselves, 452 So.2d at 1159.
In reaching a decision, the DEQ must consider and abide by the admonition from the supreme court that it "is required to make basic findings supported by evidence and ultimate findings which flow rationally from the basic findings; and it must articulate a rational connection between the facts found and the order issued." Id. It is only by detailing its reasoning does the DEQ uphold its position as public trustee and justify the discretion with which it is entrusted by constitutional and statutory authority in a contested environmental matter. American Waste, 642 So.2d at 1266.
However, the September 21, 1994 letter notifying Rubicon that the permit had *483 been granted under certain conditions with the attached conditions and response to public comments falls far short of what Save Ourselves and American Waste call for. True, this court will uphold a decision of less than ideal clarity if the DEQ's reasoning can be easily discernible on the record. Save Ourselves, 452 So.2d at 1160. But where the decision of the DEQ does not comport in the slightest with the mandate of Save Ourselves and American Waste, there is no "less than ideal clarity" to uphold.
The decision or lack thereof in this matter cries out for this court as the court of first appellate review to step forward and perform its judicial function of instruction by detailing as general as possible the needs which the DEQ must meet in rendering decisions. A decision would be more in conformity with the above mandates if it at least contained: 1) a general recitation of the facts as presented by all sides; 2) a basic finding of facts as supported by the record; 3) a response to all reasonable public comments; 4) a conclusion or conclusions on all issues raised which rationally support the order issued; and 5) any and all other matters which rationally support the DEQ's decision. This is not an exclusive listing, but merely illustrative.
Further, it should be understood that any written finding of facts and reasons for decision must satisfy the issues of whether: 1) the potential and real adverse environmental effects of the proposed project have been avoided to the maximum extent possible; 2) a cost benefit analysis of the environmental impact costs balanced against the social and economic benefits of the project demonstrate that the latter outweighs the former; and 3) there are alternative projects or alternative sites or mitigating measures which would offer more protection to the environment than the proposed project without unduly curtailing non-environmental benefits to the extent applicable.[8]Blackett, 506 So.2d at 754 (citing Save Ourselves).
DEQ has requested of this court in both oral argument and brief to "tell us what you want us to do and we will do it." Here we attempt to do just that.

CONCLUSION
In the absence of any findings by the DEQ Secretary, we hold that the petition was approved erroneously without proper evaluation. Accordingly, the September 21, 1994 approval of the petition by Rubicon, Inc. for an exemption from the land disposal restrictions is vacated and set aside; this action is remanded to the DEQ for the issuance of findings to support the approval of the petition by Rubicon, Inc. for an exemption from the land disposal restrictions consistent with the views expressed herein. Costs of this appeal are assessed against Rubicon, Inc.

VACATED AND REMANDED.
GONZALES, J., concurs in the result.
SHORTESS, J., agrees with the majority opinion and will add a concurrence.
FITZSIMMONS, J., dissents and assigns reasons.
FOGG, J., dissents and assigns reason.
LeBLANC, J., dissents in part & affirms in part & assigns reasons.
FOIL, J., dissents, and concurs for the reason assigned by FOGG, J.
PARRO, J., concurs with the holding that Act 1208 is unconstitutional, but dissents from the majority's discussion of the adequacy of DEQ's decision for the reasons set forth in Judge FOGG's dissenting opinion.
SHORTESS, Judge, concurring.
While I agree with this opinion and especially the majority's treatment of the constitutional issue,[1] I feel compelled to point out an additional problem with the statute in question.
*484 Our constitution guarantees all civil litigants the right to an appeal. Our constitution also gives appellate jurisdiction of practically all civil appeals[2] to the intermediate courts of appeal.
A cursory examination of our constitution leads inexorably to the conclusion that one complete appeal is what is intended. It satisfies due process, and it complies with the historical mechanics of our judicial system.
This statute throws in a monkey wrench. By giving appellate jurisdiction to the district courts, the appellant ends up with two appellate bites at the apple: one in the district courts, statutorily created by Act 1208, and the other, in the courts of appeal, created by the constitution. Both courts are empowered to perform the identical actjudicially review the administrative decision of the DEQ. No one can reasonably justify this anomaly.
I respectfully concur.
LeBLANC, Judge, dissenting, in part and concurring in part.
I respectfully dissent, in part. The majority finds Act 1208 of 1995 violates the "one-object" requirement and declares the entire act unconstitutional.
The purpose of the "one-object" requirement is to restrict a legislative act so that a legislator will not have to consider the validity of two unrelated objects in deciding how to vote on a bill. Bazley v. Tortorich, 397 So.2d 475, 485 (La.1981). The Louisiana Constitution does not prohibit the legislature from dealing with several branches of one subject or from providing in one act the necessary means for carrying out its object. State v. Cooper, 382 So.2d 963, 965 (La.1980). Where the parts of a statute are reasonably related and have a natural connection to the general subject matter of the legislation, the statute is considered to have one object regardless of how detailed it is regarding the accomplishment of the stated purpose. Doherty v. Calcasieu Parish School Bd., 93-3017, (La. 4/11/94), 634 So.2d 1172, 1176-76.
Act 1208 is confined to one object because all of its parts have a natural connection and reasonably relate to one general and legitimate subject of legislation, i.e., proceedings before the Department of Environmental Quality. Separate components of proceedings before the DEQ are provided for: testimony before any proceeding for judicial review of DEQ action; appeal of a final decision or order of the DEQ secretary; and, review of a final judgment or interlocutory ruling of the district court concerning appeals from the DEQ. However, each topic relates to the general purpose of the act, proceedings before the Department of Environmental Quality.
Although the majority focuses on the inclusion of witness fees for law enforcement officers before the Department of Public Safety and Corrections, a thorough reading of the amended statutes and the act reveals no change in proceedings concerning any state agency other than the DEQ. The object of the entire act is to provide for matters related to proceedings of the Department of Environmental Quality.
In addition, the act does not violate Article 3, § 15(A) of the Louisiana Constitution, requiring every bill to contain a brief title indicative of its object.
The dominate purpose of the "title-body" clause is to give the legislature and the public fair notice of the scope of legislation. The requirement is designed to defeat the deceptive practice of misleading the legislature into the passage of provisions not indicated by the title of the bill. Terrebonne Parish Police Jury v. Board of Com'rs., 306 So.2d 707, 708 (La.1975). It is not required that the title of the act be an index of its contents. Rather, it need only express the general terms of its object. Doherty v. Calcasieu Parish School Bd., 93-3017, p. 2 (La. 4/11/94); 634 So.2d 1172, 1174. All things proper and necessary to carry out the general intent and purpose of the act are deemed within the scope of its title. Groves v. Board of Trustees of Teachers' Retirement System *485 of Louisiana, 324 So.2d 587, 595 (La.App. 1st Cir.1975), writs denied, 326 So.2d 378, 380 (1976).
The title of Act 1208 provides:
to amend and reenact R.S. 13:3662(H)(2) and (3) and R.S. 30:2024(C), relative to the Department of Environmental Quality ... and to provide for related matters.
The object of the language of the body of Act 1208 is to provide for proceedings before the DEQ. Although the body discusses various proceedings before the DEQ, the body does not change existing law with respect to any matter other than proceedings relative to the DEQ. The legislature and the public had fair notice of the scope of the legislation. The title of Act 1208 is sufficiently indicative of its object. I find Act 1208 to be constitutional and would transfer jurisdiction of this and other appeals from the DEQ to the Nineteenth Judicial District Court.
I agree with the majority opinion's discussion and treatment concerning the adequacy of the DEQ's decision, finding it inadequate and remanding this action to the DEQ for the issuance of findings to support its approval of the petition by Rubicon, Inc.
FOGG, Judge, dissenting.
I respectfully dissent. The Louisiana Legislature, in its Regular Session, enacted Act No. 1208 to amend and reenact LSA-R.S. 13:3662(H)(2) and (3) and LSA-R.S. 30:2024(C). Prior to this amendment, LSA-R.S. 30:2024(C) gave this court appellate jurisdiction over DEQ actions concerning permits and exemptions. The amendment, in part, effectively places appellate jurisdiction over those decisions with the Nineteenth Judicial District Court.
It has been argued that the act violates LSA-Const. Art. 3, Sec. 15(A) because the act contains more than one object and the body of the act exceeds the scope of its title.
Art. 3, Sec. 15(A) requires that "[e]very bill, except the general appropriation bill and bills for the enactment, rearrangement, codification or revision of a system of laws, shall be confined to one object." Therefore, the issue is whether the judicial review of agency decisions is germane to the payment of witness fees. See Jones v. Board of Ethics for Elected Officials, 605 So.2d 1064 (La.1992).
In the Jones case, the Supreme Court found that an amendment which regulated lobbying before the legislature and state agencies was constitutionally germane to an amendment pertaining to physicians serving on boards of commissioners of hospital service districts. The Court reasoned that both served to effectuate the policy of the Code of Governmental Ethics by determining which persons were to be regulated in the private sector in dealings with public servants, both sought to increase the level of public confidence in the integrity of the government, and the Ethics Code contained provisions affecting lobbying activities prior to the bill.
The witness fee provisions of Act 1208 apply to all administrative agencies; therefore, they apply to DEQ. Because all parts of Act 1208 affect DEQ, the act passes the germaneness test and has a single object under the Jones case.
Art. 3, Sec. 15(A) further requires that every bill contain a brief title indicative of its object. The dominant purpose of the title clause is to give the legislature and the public fair notice of the scope of the legislation. The requirement is designed to defeat the deceptive practice of misleading the legislature into the passage of provisions not indicated by the title of the bill. Terrebonne Parish Police Jury v. Board of Com'rs, 306 So.2d 707, 708 (La.1975). The title of Act 1208 provides that the act contains amendments "relative to the Department of Environmental Quality; to provide for judicial review of agency actions; to provide for payment of witness fees to law enforcement officers subpoenaed in certain administrative proceedings; to provide for appeal of final enforcement or permit action; and to provide for related matters."
It is asserted that Act 1208 gives retroactive treatment to pending appeals, but does not reveal this in its title; therefore, the body of the act is broader than its title. With respect to the issue of retroactive application, this court addressed very similar legislation in the case of American Waste and Pollution Control Company v. State, Department *486 of Environmental Quality, 597 So.2d 1125 (La.App. 1st Cir.1992). Therein, we were asked to determine whether an amendment to section A of R.S. 30:2024 (currently we are dealing with section C of R.S. 30:2024), which removed jurisdiction over some DEQ appeals from this court and placed jurisdiction in the Nineteenth Judicial District Court, would be applied retroactively. The act was silent on the issue of retroactivity. Applying LSA-C.C. art. 6, we held that the amendment was procedural and, therefore, applied retroactively. We, then, transferred the appeal, which was pending before this court prior to the enactment of the amendment, to the Nineteenth Judicial District Court. If Act 1208 had been silent with respect to the issue of retroactivity, American Waste would dictate that the amendment be applied retroactively. The fact that the body of Act 1208 provides that it is procedural should not change this result. To require the legislature to include the retroactive application of an act in the title of the act would be an extension of existing jurisprudence. Furthermore, the title of Act 1208 provides fair notice of its scope, fairly indicates the subject dealt with in the act, and is not misleading.
For these reasons, I believe Act 1208 is constitutional and jurisdiction of all DEQ actions concerning permits and exemptions is transferred to the Nineteenth Judicial District Court.
I further disagree with the majority's basis for determining that the decision of DEQ is not adequate for our review. Apparently, the majority is unwilling to review an agency action unless the record contains one final, comprehensive document containing at least the following factors: 1) a general recitation of the facts as presented by all sides; 2) a basic finding of facts as supported by the record; 3) a response to all reasonable public comments; 4) a conclusion or conclusions on all issues which rationally support the order issued; and 5) any and all other matters which rationally support the DEQ's decision. The requirement that the agency produce such a document and the requirement that the above factors be included therein exceed the duty of DEQ as set forth in Save Ourselves v. Louisiana Environmental Control Commission, 452 So.2d 1152 (La.1984).
In that case, the Louisiana Supreme Court held that, for the purposes of judicial review, and in order to assure that the agency has acted reasonably in accordance with law, in a contested case involving complex issues, the agency is required to make basic findings supported by evidence and ultimate findings which flow rationally from the basic findings; and it must articulate a rational connection between the facts found and the order issued. Save Ourselves, Inc., 452 So.2d at 1159. The court may uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned, such as when its findings, reasons and exercise of discretion are necessarily and clearly implied by the record. Save Ourselves, Inc., 452 So.2d at 1160. We stated in the case of Blackett v. Louisiana Dept. of Environmental Quality, 506 So.2d 749 (La.App. 1 Cir.1987) that, while the administrative agency must articulate the basis for its decision, where the findings and reasons therefor are necessarily implicit in the record and the record readily yields substantial evidence to support the administrative determination, the administrative order is not invalid merely because of the agency's failure to make explicit its finding which was already self evident.
The approach of reviewing the issue of the adequacy of the factual findings and conclusions of the agency on a case by case basis is consistent with the dictates of Save Ourselves and the analysis employed by the Supreme Court in both Save Ourselves and In the Matter of American Waste and Pollution Control Co., 642 So.2d 1258 (La.1994), as well as by this court in Blackett.
In the majority opinion, however, the only references made to the particular record are that an exemption was granted by a letter signed by an assistant secretary of DEQ. Attached to the letter were twelve conditions Rubicon was required to meet and a brief summary of DEQ's response to three issues which had been raised during the public comment period. In conclusion, the majority finds that "the ... letter notifying Rubicon that the permit had been granted under certain conditions with the attached conditions *487 and response to public comments falls short of what Save Ourselves and American Waste call for." Clearly, no attempt was made to determine whether "the agency's path could be reasonably discerned" from the record as discussed in Save Ourselves. No attempt was made to determine whether "the record readily yields substantial evidence to support the administrative determination" as discussed in Blackett. In fact, it is unclear, from the majority opinion, whether the letter and its attachments constitute the totality of the agency's decision in this matter.
In sum, absent from the majority's analysis is a statement of exactly how DEQ's action fails to comply with Save Ourselves; instead, the majority opinion contains only conclusions without any stated bases. I believe it is not the function of this court to determine how an agency should meet its constitutional mandates; rather, our function is limited to determining whether those requirements have been adequately complied with. I believe the majority has overreached its function of appellate review by requiring more of DEQ than is required under the Supreme Court's interpretation of the Constitution and the pertinent legislation in Save Ourselves.
FITZSIMMONS, Judge, dissenting.
I respectfully join in the dissent articulated by Judge Fogg, and wish to assign additional reasons in support of the constitutional viability of Louisiana legislative Act 1208.
Act 1208 involves an amendment by the legislature of certain provisions related to enforcement and judicial proceedings of the Department of Environmental Quality (DEQ). One of the revisions was to La.R.S. 30:2024 (prior Act 947), in which post-administrative review was jurisdictionally removed from the appellate court. Jurisdiction was then transferred to the district court level where the agency is located. Additionally, the provisions of Act 1208 added language to provide witness fees for enforcement officials subpoenaed pursuant to DEQ administrative proceedings. This supplemental amendment affected a separate statute. R.S. 13:3662(H)(2) had previously concerned witness fees for the Department of Safety and Corrections in unrelated state administrative circumstances.[1] The pivotal issue before this en banc sitting in determining whether Act 1208 must fall, is whether the constitutional requirement that each bill must be limited to one object has been violated by the inclusion of the witness fee provisions within the act.
La. Const. Art. 3, § 15(A) requires in pertinent part that "Every bill, shall be confined to one object ...". The parameters of this single object mandate have historically been broadly interpreted by the judiciary. In Jones v. Board of Ethics for Elected Officials, 605 So.2d 1064 (La.1992), the court reviewed this very issue. It specifically stated: "Statutes are presumed to be constitutional.... La. Const. art. 111, § 15(C) must be construed broadly rather than narrowly with the view of effectuating, not frustrating, the legislative purpose." Jones, id. at p. 1067.
Another supreme court case, State v. Cooper, 382 So.2d 963 (La.1980), involved a legislative amendment to La.R.S. 14 § 30 and La.R.S. 14 § 30.1, which respectively defined the crimes of first and second degree murder. The act under constitutional scrutiny inhered a list of aggravating circumstances for sentencing consideration by a jury in all capital cases. This latter provision related to a separate procedural statute, La.C.Crim.P. art. 905.4. The lower court had held that the combination of the substantive definition of two specific crimes combined with a different procedural law that encompassed all capital cases, was an unconstitutional violation of the one object rule. The supreme court reversed. It declared that "[t]he Constitution does not prohibit the legislature from dealing with several branches of one subject or from providing in one act the necessary means for carrying out its object." Cooper, id. at p. 965. This is precisely what is before us: several branches of one subjectnamely, review proceedings and related matters involving DEQ.
*488 So too, in Doherty v. Calcasieu Parish School Board, 93-3017 (La. 4/11/94); 634 So.2d 1172, the supreme court, in cogent dicta, enunciated a broad interpretation of the appropriate range of a legislative object to satisfy the single object criterion. Referencing State v. Cooper, id., the court summarized: "Where the parts of a statute are reasonably related and have a natural connection to the general subject matter of the legislation, the statute is considered to have one object regardless of how detailed it is regarding the accomplishment of the stated purpose. State v. Cooper, 382 So.2d 963 (La.1980)." (Emphasis supplied). Doherty, id., at p. 1176. Here the purpose is the DEQ and related review proceedings.
It is paramount in considering the single objectivity requirement of the state constitution, to distinguish between the content of the particular statutes that are affected by the legislative act and the scope, or the object, of the act itself. Act 1208 amends two disparate statutory articles; however, the subject matter addressed by the act itself is solely germane to enforcement and judicially related elements for the Department of Environmental Quality. The inclusion of law enforcement officer witness fees for administrative action by the DEQ is no more dual in nature than the addition of jury sentencing variables for all capital crimes to the definition of two specific crimes. State v. Cooper, id. Its scope is certainly more narrow than the merger of provisions dealing with public licensure requirements for any wildlife related activities and wildlife enforcement clauses in an act that was upheld in State v. Ross, 543 So.2d 645 (La.App. 4th Cir.1989).
Providing for witness fees when enforcement agents are subpoened to testify in cases involving the DEQ clearly falls within the purview of a separate "branch of one subject", id. est., enforcement and judicial review proceedings involving the DEQ. Additionally, the inclusion of the very practical topic of witness fees for law enforcement officials summoned to DEQ hearings should certainly be classified as a "necessary means for carrying out its object". Cooper, id. at p. 965. It is not an incongruous and unrelated matter to those proceedings. Cooper id. at p. 965. Therefore, Act 1208 falls within the ambit of constitutional propriety.

On Application for Rehearing
PER CURIAM.
DEQ and Rubicon have filed Applications for Rehearing in the instant case urging us to reconsider our conclusion regarding the adequacy of DEQ's decision. Both parties contend that the record in the present case conforms with the mandates of Save Ourselves, Inc. v. Louisiana Environmental Control Commission, 452 So.2d 1152 (La. 1984); In the Matter of American Waste and Pollution Control Company, 642 So.2d 1258 (La.1994) and Blackett v. Louisiana Department of Environmental Quality, 506 So.2d 749 (La.App. 1st Cir.1987).
In our original opinion, at the specific request of DEQ, we supplied in very general terms the components which are necessary for drafting a decision in conformity with the requirements of Save Ourselves. After considering the arguments presented on rehearing by DEQ and Rubicon, we are convinced that our original decision on this issue was correct.
On rehearing, DEQ seeks clarification as to whether our original opinion applies to all DEQ permit decisions. The requirements imposed by the Louisiana Supreme Court in Save Ourselves applies to "contested case[s] involving complex issues." Save Ourselves, 452 So.2d at 1159. Our decision, which relied on Save Ourselves, likewise applies to contested cases involving complex issues and not to uncontested matters involving only simple issues.
On original hearing, we concluded that in the absence of any findings by the DEQ Secretary, the permit was erroneously approved. We then vacated and set aside DEQ's approval of Rubicon's exemption petition and remanded the case to DEQ for issuance of findings to support the approval. On rehearing, DEQ argues that it would be more efficient if we retained jurisdiction over this matter by simply remanding the case to DEQ to issue findings rather than vacating and setting aside the permit approval. DEQ also seeks clarification as to whether it must begin the petition process anew or whether it *489 should merely issue findings to support the approval of the petition. Additional clarification is sought by Rubicon as to whether the permit itself has been vacated.
Article IX, Section 1 of the Louisiana Constitution mandates that the "natural resources of the state ... be protected." Until DEQ, as the agency designated by the legislature with the responsibility to protect the environment, fully complies with its responsibilities and obligations, any action taken not in compliance therewith, e.g., the issuance of the permit herein, is null and void and must be vacated. Our original opinion does not contemplate nor express the need to relitigate the issues involved sub judice. All DEQ need do is issue a decision in compliance with the views expressed in our original opinion.
Therefore, the application for rehearing is denied.
REHEARING DENIED.
FOIL, FOGG, FITZSIMMONS and PARRO, JJ., would grant the rehearing.
NOTES
[1] La.R.S. 30:2024(C) provided in part:

Any person aggrieved by a final decision or order of the secretary may appeal therefrom to the Court of Appeal, First Circuit, if a motion for an appeal is filed with the secretary within thirty days after the final decision or order is served upon the respondent.
[2] Act 1208 provides:

AN ACT to amend and reenact R.S. 13:3662(H)(2) and (3) and R.S. 30:2024(C), relative to the Department of Environmental Quality; to provide for judicial review of agency actions; to provide for payment of witness fees to law enforcement officers subpoenaed in certain administrative proceedings; to provide for appeal of final enforcement or permit action; and to provide for related matters.
Be it enacted by the Legislature of Louisiana:
Section 1. R.S. 13:3662(H)(2) and (3) are hereby amended and reenacted to read as follows:
§ 3662. Witness fees for law enforcement officers, fire service personnel, and representatives of governmental traffic engineering departments
* * * * *
H.
* * * * *
(2)(a) When a law enforcement officer is subpoenaed by the Department of Public Safety and Corrections for the purpose of appearing and giving testimony in any proceeding for judicial review of administrative action of the Department of Public Safety and Corrections pursuant to any law of this state, including but not limited to such action pursuant to R.S. 32:668, R.S. 32:1504, and R.S. 40:1485.6, the Department of Public Safety and Corrections shall deposit with the clerk of court for each subpoena so issued the sum of twenty-five dollars. Any law enforcement officer appearing pursuant to such subpoena shall, whether or not he actually testifies, be paid by the clerk of court said sum of twenty-five dollars upon the officer signing a certification on the subpoena that at the time of the appearance he was off duty and not otherwise required to report to work.
(b) When a law enforcement officer is subpoenaed by the Department of Environmental Quality for the purpose of appearing and giving testimony in any proceeding for judicial review of administrative action of the Department of Environmental Quality pursuant to any law of this state, including but not limited to such action pursuant to R.S. 30:2024, the Department of Environmental Quality shall deposit with the clerk of court for each subpoena issued, the sum of twenty-five dollars. Any law enforcement officer appearing pursuant to such subpoena shall, whether or not he actually testifies, be paid by the clerk of court said sum of twenty-five dollars upon the officer signing a certification on the subpoena that at the time of the appearance he was off duty and not otherwise required to report to work.
(3) Any sum deposited by the Department of Public Safety and Corrections or the Department of Environmental Quality and paid to a law enforcement officer pursuant to Subparagraph (2)(a) or (b) of this Subsection shall be taxed as costs and assessed against the nonprevailing party in the proceeding for judicial review. Any such sum not paid to a law enforcement officer shall be remitted monthly to the Department of Public Safety and Corrections or the Department of Environmental Quality, as the case may be, by the clerk of court.
Section 2. R.S. 30:2024(C) is hereby amended and reenacted to read as follows:
* * * * * *
§ 2024. Finality of action; trial de novo; appeals
* * * * * *
C. (1) Any person aggrieved by a final decision or order of the secretary may appeal such decision or order by filing a petition for review within thirty days after the final decision or order is served upon the respondent with the district court of the parish in which the agency is located. The decision or order shall be subject to review in accordance with R.S. 49:964. Such trial shall be conducted in a summary manner by preference and priority. No bond for appeal shall be required.
(2) Any party aggrieved by a final judgment or interlocutory ruling of the district court may appeal therefrom or seek review thereof, as the case may be, to the appropriate circuit court of appeal, in the manner provided by law.
(3) Any party aggrieved by a final judgment of a circuit court of appeal may seek review as provided by law.
* * * * * *
Section 3. This Act shall become effective upon signature by the governor or, if not signed by the governor, upon expiration of the time for bills to become law without signature by the governor, as provided in Article III, Section 18 of the Constitution of Louisiana. If vetoed by the governor and subsequently approved by the legislature, this Act shall become effective on the day following such approval.
Section 4. The provisions of this Act shall be procedural law in accordance with Civil Code Article 6.
Approved June 29, 1995.
[3] The exceptions are articulated in State v. Wright, 305 So.2d 406, 409 (La.1974) (Summers, J., dissenting) and Summerell v. Phillips, 258 La. 587, 247 So.2d 542, 546 n. 5 (1971).
[4] The "one object" requirement of Article III, § 15(A) differs from the Article III, § 15(C) requirement that amendments to bills be germane to the bill as introduced. For a first impression discussion and handling of the germaneness issue see Jones v. Board of Ethics for Elected Officials, 605 So.2d 1064 (La.1992).
[5] In the Matter of E.I. Dupont De Nemours & Company, Inc., 94CA2549, was argued on the same day as the present case. The parties presented similar arguments regarding the constitutionality of Act 1208.
[6] Pending our decision on the constitutionality of Act 1208, this court has deferred its decision on whether to transfer any pending appeals of DEQ actions.
[7] LEAN assigned the following errors:

1. The DEQ's Final Decision granting Rubicon an exemption from the statutory ban on hazardous waste land disposal violates the DEQ's duty as primary public trustee of the environment to protect the environment "insofar as possible consistent with the health, safety, and welfare of the people," to the specific detriment of Appellants, whose members are beneficiaries of the public trust.
2. The DEQ is bound by the Louisiana Constitution, Louisiana Statutes, and the DEQ's own rules and regulations. The Final Decision granting Rubicon the exemption from the Statutory ban on hazardous waste land disposal violates the Louisiana Constitution, the Environmental Quality Act, and the DEQ's Hazardous Waste Regulations.
3. Based on the information and evidence contained in the administrative record, the DEQ's Final Decision granting Rubicon an exemption from the statutory ban on hazardous waste land disposal restrictions is arbitrary and capricious, manifestly erroneous by not being based on substantial evidence of the record as a whole, and is characterized by an abuse of discretion.
[8] The enumeration of five separate issues in Blackett was an overstatement. Save Ourselves only required satisfaction of the above three issues. To that extent, our decision in Blackett is amended.
[1] A case may also be made, in my opinion, that the statute is in conflict with article V, sections 10(A) of the Louisiana Constitution.
[2] Notable exceptions are decisions from the Public Service Commission, which go directly to the Louisiana Supreme Court, and cases where a law or ordinance has been declared unconstitutional.
[1] La.R.S. 13:3662 contained a nonexclusive reference to administrative proceedings including: enforcement of gaming laws and regulations, revocation or denial of a driver's license, and transportation involving hazardous materials.