714 So.2d 1 (1998)
MMR-RADON CONSTRUCTORS, INC.
v.
The CONTINENTAL INSURANCE COMPANY, and Woodrow Wilson Construction Company, Inc.
No. 97 CA 0159.
Court of Appeal of Louisiana, First Circuit.
March 3, 1998
Rehearing Denied May 13, 1998.
*2 Craig L. Kaster, Gunn, Smith & Kaster, Zachary, for Plaintiff-Appellee MMR-Radon Constructors, Inc.
George K. Anding, Jr., Rainer & Anding, Baton Rouge, for Defendants-Appellants Continental Insurance Company and Woodrow Wilson Construction Company, Inc.
Before FOIL, PARRO and GUIDRY, JJ.
PARRO, Judge.
This appeal is from a judgment confirming an arbitration award in favor of a sub-contractor, and denying the general contractor's motion to vacate that award. We affirm.

FACTS AND PROCEDURAL HISTORY
Woodrow Wilson Construction Company, Inc. ("Wilson") was the general contractor for construction of dormitories at Avoyelles Correctional Institute, Winn Correctional Center, and Allen Correctional Center. The State of Louisiana, through the Louisiana Correctional Facilities Corporation ("LCFC"), was the owner of the prison facilities where the new dormitories were to be built. The Continental Insurance Company ("Continental") provided Wilson's performance and payment bond on the project. Wilson sub-contracted site preparation and cleanup work to Radon, Inc., the predecessor-in-interest to MMR-Radon Constructors, Inc. ("Radon"). During the project, Radon claimed some of the work it was required to do exceeded the scope of its contract and asked for additional payments from Wilson. Wilson denied the claims. In October 1992, Radon requested arbitration of its claims, pursuant to the terms of its contract. In January 1993, to preserve its rights against Wilson and Continental, Radon also filed this lawsuit. On Radon's motion, the litigation was stayed pending the outcome of the arbitration.[1]
Wilson and Continental then filed a separate suit for declaratory judgment and for stay of arbitration, alleging the matter was not subject to arbitration as long as claims were being brought against the owner under the main contract and those claims were not subject to arbitration. The court in that suit agreed, and the arbitration proceedings were halted.[2]
In March 1994, Wilson filed a third party demand against LCFC in this suit for reimbursement, in the event Radon's claims were recognized. LCFC moved for summary judgment in its favor, which was granted. Since this judgment dismissed LCFC, thereby eliminating Wilson's claims against the owner, Radon again moved successfully to stay this litigation, pending arbitration. Also, Wilson appealed the granting of summary judgment in favor of LCFC; this court *3 affirmed that decision and the supreme court denied the writ application. See MMR-Radon Constructors, Inc. v. The Continental Ins. Co., 95-2266 (La.App. 1st Cir. 6/28/96), writ denied, 96-1952 (La.11/1/96) (unreported decision).
The arbitration finally commenced. Three arbitrators were selected in accordance with the applicable rules of the American Arbitration Association. The hearing on the merits of Radon's claim and a counterclaim filed by Wilson took place on nine days over the course of four months in 1996.[3] At some point during this period, one of the arbitrators, attorney Frederick R. Bott, was diagnosed with malignant lymphoma and, although he was willing to continue on the panel, one hearing date had to be re-scheduled to accommodate him. The last scheduled dates for the hearing were May 16th and 17th. On the morning of the 16th, Mr. Bott's secretary called the case administrator for the arbitration and advised that Mr. Bott had been unexpectedly hospitalized and would be in the hospital at least through the 19th, and perhaps longer. When the parties were advised of this situation, several possible courses of action were considered. Radon suggested the session be video-taped for later review by Mr. Bott; Wilson opposed this because it would not allow full participation by Mr. Bott as the evidence was presented. Radon then moved to vacate Mr. Bott's position and allow the remaining arbitrators to continue the hearing; Wilson objected to this procedure, preferring to postpone the hearing again until Mr. Bott might be able to participate. However, because the hearing had been so often delayed, and the rules under which the arbitration was being conducted allowed the case administrator to vacate Mr. Bott's position, Radon's motion to vacate Mr. Bott's position was granted, over the objection of Wilson. No attempt was made to contact Mr. Bott in the hospital concerning this decision. The two remaining arbitrators decided to continue with the hearing on the merits with just the two of them constituting the arbitration panel, a course of action which was also permissible under the rules. They eventually decided the case in Radon's favor, awarding it $404,774.90 on its claims, plus interest from October 15, 1992. Wilson was also ordered to reimburse Radon $3,018.56 for arbitration expenses and fees. Nothing was awarded to Wilson on its counterclaim.
The award was payable within thirty days and, after that time had elapsed with no payment from Wilson, Radon filed a motion with the district court to confirm the arbitration award. Wilson responded with a motion to vacate the award. After reviewing briefs and documentary evidence, hearing oral arguments, and allowing the supplementation of the record with affidavits from several of the arbitration participants, the court granted the motion to confirm the arbitration award and denied the motion to vacate it. On October 11, 1996, the court signed a judgment against Wilson and Continental, in solido, and in favor of Radon, in the amount of $407,774.90, with legal interest from October 15, 1992, plus reimbursement of arbitration costs in the amount of $3,018.56, together with all court costs. Wilson and Continental appeal that judgment.

PRELIMINARY MATTERMOTION TO REMAND
After this appeal was filed, Wilson filed a motion in this court to remand the case for the introduction of new evidence. Radon opposes this motion. The gist of the motion to remand is that after the appeal had been filed and briefs submitted, Wilson learned of a previously undisclosed friendship and professional relationship between one of the arbitrators and the brother of a Radon principal officer/owner. Accompanying Wilson's motion to remand were various affidavits concerning this relationship and communications which might have occurred and might have influenced the arbitrator's decision. Radon's opposition brief also had several affidavits attached which, although acknowledging the existence of such a relationship, denied many of the allegations made in the Wilson affidavits. In particular, these affidavits specifically denied that anyone attempted *4 to influence the arbitration and stated categorically that there were no communications with any arbitrator before, during, or after the arbitration concerning the subject of the arbitration, other than through the attorneys for the parties.
On the basis of this information, Wilson also filed a separate suit in the Nineteenth Judicial District Court to nullify the October 11, 1996 judgment, pursuant to LSA-C.C.P. arts. 2001 et seq. In that suit, Wilson alleged that new evidence was discovered which constitutes a sufficient basis for nullification of the judgment, and that its suit was filed within one year of discovery of the new evidence.
Under LSA-C.C.P. art. 2164, courts of appeal have the power to remand a case for the introduction of additional evidence if grave injustice might result from failure to do so. Our Lady of the Lake Hospital, Inc. v. Carboline Company, 632 So.2d 339, 343 (La.App. 1st Cir.1993), writs denied, 94-0287 (La.3/25/94), 635 So.2d 228 and 94-0753 (La.5/6/94), 637 So.2d 1052. A remand for the introduction of additional evidence is warranted only when the new evidence is likely to affect the outcome of the case. White v. West Carroll Hospital, Inc., 613 So.2d 150, 154 (La.1992). Although discretionary, the power to remand on this basis should be exercised sparingly. See Herbert v. Travelers Indemnity Co., 255 La. 645, 232 So.2d 463, 465 (1970); Gentile v. Baton Rouge General Medical Center, 95-0348 (La. App. 1st Cir. 11/9/95), 665 So.2d 422, 430; Ray McDermott, Inc. v. Morrison, 96-2337, p. 5 (La.App. 1st Cir. 11/7/97), 705 So.2d 195, 198.
A final judgment obtained by fraud or ill practices may be annulled. An action to annul a judgment on these grounds must be brought by the plaintiff in the nullity action within one year of the discovery of the fraud or ill practices. LSA-C.C.P. art. 2004. A judgment may be annulled prior to or pending an appeal therefrom, and a judgment affirmed, reversed, amended, or otherwise rendered by an appellate court may be annulled only when the ground for nullity did not appear in the record of appeal or was not considered by the appellate court. LSA-C.C.P. art. 2005. An action to annul a judgment must be brought in the trial court, even though the judgment sought to be annulled may have been affirmed on appeal, or even rendered by the appellate court. LSA-C.C.P. art. 2006; see Tracy v. Dufrene, 240 La. 232,121 So.2d 843, 845 (1960).
The affidavits submitted with briefs by both parties in connection with the motion to remand do not form part of the appellate record in this case. See Our Lady of the Lake Hospital v. Vanner, 95-0754 (La.App. 1st Cir. 12/15/95), 669 So.2d 463, 465. This court cannot supplement the record on appeal with such evidence. To do so would constitute the taking of evidence and the exercise of original jurisdiction in a matter in which this court is not vested with authority. See White, 613 So.2d at 154; Tranum v. Hebert, 581 So.2d 1023, 1026-27 (La.App. 1st Cir.), writ denied, 584 So.2d 1169 (La.1991). Yet, in order to determine whether the new evidence might influence the outcome of the case, such that remand would be appropriate, this court would have to review the new evidence and make many evaluations concerning its admissibility, credibility, and sufficiency. We decline to do so in this instance, because there is another remedy available, and Wilson has already availed itself of that remedy by filing a petition to nullify the judgment. That action will provide a more appropriate forum for the presentation of the new evidence in this case. If Wilson can establish there that the judgment in this case was tainted by fraud or ill practices, the judgment can be annulled even after action by this court, because the ground for that nullity does not appear in the record of appeal and will not be considered by this court.

STANDARD OF REVIEW AND APPLICABLE LAW
Under the Louisiana Arbitration Law, LSA-R.S. 9:4201 et seq., a party to an arbitration proceeding may, within one year after the award is made, apply to the district court for confirmation of the award, and the court must confirm the award unless the award is vacated, modified, or corrected. LSA-R.S. *5 9:4209. The grounds for vacating an award are set out in LSA-R.S. 9:4210, which states:
In any of the following cases the court in and for the parish wherein the award was made shall issue an order vacating the award upon the application of any party to the arbitration.
A. Where the award was procured by corruption, fraud, or undue means.
B. Where there was evident partiality or corruption on the part of the arbitrators or any of them.
C. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been prejudiced.
D. Where the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
Arbitration is a mode of resolving differences through the investigation and determination by one or more individuals appointed for that purpose. The object of arbitration is the speedy disposition of differences through informal procedures without resort to court action. Firmin v. Garber, 353 So.2d 975, 977 (La.1977). Because of the strong public policy favoring arbitration, arbitration awards are presumed to be valid. Judges are not entitled to substitute their judgment for that of the arbitrators chosen by the parties. National Tea Co. v. Richmond, 548 So.2d 930, 932-33 (La.1989). It is well-settled in both state and federal courts that an award may be challenged only on the grounds specified in the applicable arbitration statute. A court does not ordinarily sit in an appellate capacity to an arbitration panel, but confines its determination to whether there exists one or more of the specific grounds for impeachment as provided for under the applicable statute. Woodrow Wilson Const. Co., Inc. v. MMR-Radon Constructors, Inc., 96-0618 (La.App. 1st Cir. 12/20/96), 684 So.2d 1125, 1127, writ denied, 97-0152 (La.3/7/97), 689 So.2d 1379. The burden of proof rests upon the party attacking the award. Hill v. Cloud, 26,391 (La.App. 2nd Cir. 1/25/95), 648 So.2d 1383, 1388, writ dismissed, 95-0486 (La.3/17/95), 651 So.2d 260.

CONFIRMATION OF THE ARBITRATION AWARD
On appeal, Wilson contends the district court erred in denying its motion to vacate the award and in granting Radon's motion to confirm the award, when the evidence before the court clearly revealed that the award was improperly rendered and that Wilson was denied a fundamentally fair hearing. Wilson's main contention is that the case administrator's decision to vacate Mr. Bott's position, rather than postpone the last two days of the hearing, was arbitrary and capricious, because no attempt was made to contact Mr. Bott to determine whether he was, in fact, willing and able to Iscontinue on the panel. An affidavit from Mr. Bott which was submitted to the court indicated his hospital stay was not extended and, had the hearing dates been re-scheduled, he could have participated. Wilson claims the refusal to postpone the hearing under these circumstances constitutes grounds for vacating the award under LSA-R.S. 9:4210(C).
The district court apparently disagreed, as do we. Section 20 of the Construction Industry Arbitration Rules of the American Arbitration Association then in effect ("the Rules"), under which the arbitration was being conducted, states, in pertinent part:
If for any reason an arbitrator is unable to perform the duties of the office, the AAA may, on proof satisfactory to it, declare the office vacant.... In the event of a vacancy in a panel of neutral arbitrators after the hearings have commenced, the remaining arbitrator or arbitrators may continue with the hearing and determination of the controversy, unless the parties agree otherwise.
The claims which form the basis of this arbitration occurred during 1991 and 1992, and Radon initiated the arbitration in accordance with its contract in late 1992. The arbitration was stayed for several years while Wilson *6 litigated its claims against LCFC. Then, even after the arbitration began, the hearing was stretched out over a four-month period, and one of the hearing dates had to be postponed at Mr. Bott's request. An affidavit submitted to the court by the case administrator indicates she felt she had sufficient information concerning Mr. Bott's situation at the time to make the decision to vacate the position. She knew he was seriously ill; Mr. Bott had told her his prognosis was indefinite, but he would continue on the panel as best he could. The case administrator's decision not to telephone Mr. Bott in the hospital, after being advised by his secretary that an emergency situation existed, was not unreasonable. Nor was the decision to vacate his position in accordance with the Rules, rather than postpone the last two days of the hearing, given Mr. Bott's condition and the delays which had already occurred. Wilson would not agree to have the last days of the hearing videotaped or transcribed so Mr. Bott could participate. Yet Wilson now complains that Mr. Bott's legal expertise was so invaluable to the deliberations that without him, the arbitration was fundamentally unfair. There are other types of practical experience and knowledge of the subject which may be more valuable in an arbitration than legal expertise. Wilson did not object to the qualifications of the remaining panelists when they were selected as neutral arbitrators. Other than Wilson's claim that the results are so skewed that the remaining arbitrators must not have understood the case, there is nothing in the record to suggest the other two arbitrators on the panel were unqualified to consider the evidence and reach an equitable decision.
Wilson also argues that Section 20 of the Rules is fundamentally unfair in its application when, as in this case, one party objects and the remaining two panelists elect to continue and decide the case over such objection. We do not agree that it is unfair for two persons to reach a decision when the Rules also provide that a majority of a three-person panel can decide a case. Even if Mr. Bott had totally disagreed with the other two panel members, they could still have carried the decision. More importantly, Wilson agreed to this procedure when it entered into a contract that specified the use of arbitration to resolve conflicts and denoted which arbitration rules were to apply. Having agreed to settle differences by the use of these Rules, Wilson cannot now complain that the Rules were unfair, simply because the result was not to its liking. See generally In re Arbitration Between U.S. Turnkey Exploration, Inc. and PSI, Inc., 577 So.2d 1131, 1135 (La.App. 1st Cir.), writ denied, 580 So.2d 676 (La.1991) (the court there noted that, because the parties had agreed to arbitrate according to the rules of the American Arbitration Association, they were bound by those rules and could not insist that procedural and evidentiary rules otherwise applicable to proceedings in the courts of Louisiana should have been applied to the arbitration proceedings also).
Wilson claims the award was "so obviously one-sided as to serve as patent and manifest evidence of impropriety," in view of the "mountain of evidence and testimony of unbiased, non-party witnesses submitted by Wilson" at the hearing. This was a complicated case, and both sides submitted considerable evidence. Upon review of that evidence, a court might well reach a different decision than did this panel. However, a court cannot substitute its conclusions for those of the arbitrators. Firmin, 353 So.2d at 977. Nor can this court agree that a one-sided decision between these two parties is, on its face, patent evidence of impropriety, given that another arbitrator reached a similarly one-sided result in a totally different arbitration of another project involving similar conflicts between these same parties. See Woodrow Wilson Const. Co., Inc., 684 So.2d 1125.
Finally, Wilson submitted affidavits to the court concerning certain conduct of the arbitrators, alleging this conduct deprived it of a fair hearing. The conduct complained of included occasional inattentiveness by one or both of the arbitrators and some remarks, nods, smiles, and winks which Wilson interpreted as approbation of its position and which purportedly led Wilson to believe it did not need to belabor certain points of its presentation by introducing additional *7 evidence or adducing additional testimony. Wilson did not object to any of this conduct during the hearing. A party must object to the arbitrator's conduct at the arbitration hearing before such an objection will be considered by the reviewing court. See In re Arbitration Between U.S. Turnkey Exploration, Inc. and PSI, Inc., 577 So.2d at 1135. Surely, had the decision of the panel gone the other way, Wilson would not now be complaining that one of the arbitrators made gestures which it thought indicated approval of its position. Also, considering nine days were required for a hearing of this matter, an occasional momentary diversion from the presentation is not such misconduct as would justify vacating the award.

CONCLUSION
For the foregoing reasons, the motion to remand is denied, and the judgment of the district court confirming the arbitration award is affirmed. All costs of this appeal are assessed against Wilson.
AFFIRMED.

On Application for Rehearing
Rehearing Denied.
GUIDRY, J., would grant rehearing and stay.
NOTES
[1] A motion to lift this stay was subsequently granted.
[2] See Woodrow Wilson Const. Co., Inc. v. MMR-Radon Constructors, Inc., Docket No. 394,062, Division "M", Nineteenth Judicial District Court.
[3] Wilson counterclaimed for costs it had allegedly incurred completing the projects after Radon ceased work and repairing some of the work done by Radon.