814 So.2d 20 (2002)
In the Matter of SHINTECH, INC.
Proceedings for Judicial Review Under the Louisiana Environmental Quality Act, La. R.S. 30:2001 et seq.
No. 2000 CA 1984.
Court of Appeal of Louisiana, First Circuit.
February 15, 2002.
Writ Denied May 10, 2002.
*21 Joseph J. McKernan, Baton Rouge, for Appellants/Plaintiffs Elizabeth Avants, Les Ann Kirkland, Brenda Bueche, Michell Bond, Barry Ingram, Albertha Hasten.
Robert E. Holden, New Orleans, for Appellee Shintech, Inc.
Steven J. Levine, Baton Rouge, for Appellee/Defendant Dow Chemical Company.
Christopher A. Ratcliff, Baton Rouge, for Louisiana Department of Environmental Quality.
Before: FOIL, PETTIGREW and KLINE,[*] JJ.
*22 FOIL, Judge.
This appeal challenges the trial court's decision to uphold an operating permit granted by the Louisiana Department of Environmental Quality. We affirm.

BACKGROUND
The facts forming the basis for this appeal are not disputed. Those facts, stated in the trial court's well-articulated reasons for judgment, the basis for the administrative decision and the parties' briefs can be summarized as follows: Since 1974, Shintech, Inc. has operated a polyvinyl chloride (PVC) facility in Freeport, Texas. PVC is a plastic material used to make numerous consumer products such as water pipes, furniture and vinyl siding. The primary raw material used to manufacture PVC is vinyl chloride monomer (VCM). A PVC manufacturer can either manufacture its own VCM, or purchase that product from another chemical company. Shintech's Freeport plant purchases VCM from The Dow Chemical Company (Dow), which operates a VCM manufacturing facility adjacent to the Freeport plant.
Shintech sought to expand its PVC manufacturing operations to Louisiana. It first proposed to build a facility in St. James that would manufacture its own VCM. Although Shintech was granted a permit to operate this facility, it abandoned the proposed project.
Shintech then proposed to build a PVC-only plant in Louisiana, which would require it to purchase VCM. Dow is one of the largest merchant suppliers of VCM in the United States and is the only supplier that had the capacity to provide Shintech with the large amount of VCM required for the proposed PVC facility. Shintech determined that it would locate its PVC plant near Dow's Plaquemine plant. The VCM feedstock needed by Shintech would be shipped to its facility from Dow by means of underground pipelines.
Before constructing the facility, Shintech was required by the Louisiana Air Quality Regulations to obtain a permit from Louisiana Department of Environmental Quality (DEQ) for the emissions of pollutants into the air that would result from the operation of a new facility. On March 12, 1999, Shintech submitted a Part 70 Construction and Operating permit application for the construction and operation of a PVC manufacturing facility near Addis. Shintech proposed to construct the facility on a 275-acre tract of land located on the west side of Louisiana Highway 1 in West Baton Rouge and Iberville Parishes. The site is across the highway from the Dow Plaquemine plant.
In its permit application, Shintech discussed in detail the processes that went into its site selection. Given its business decision to locate the PVC facility in the vicinity of Dow's Plaquemine plant, Shintech established the following site selection criteria: (1) availability of a tract of land measuring 200 acres or more to accommodate the plant and provide a buffer zone; (2) state and local community support; (3) ready access to utilities; (4) ready access to industrial rail and highway transportation infrastructure; (5) ready access to industrial service infrastructure; and (6) availability of an industrial work force. Shintech also held public meetings to identify the issues relevant to siting of the proposed project, which were: (1) proximity to residential areas; (2) potential rail burden impacts to La. Hwy. 1 by the movement of rail cars across the travelled highway; (3) potential rail burden impacts to Louisiana Highway 1148; and (4) industrial encroachment on the west side of La. Hwy. 1.
Shintech considered eight sites in the vicinity of Dow's Plaquemine plant. Five *23 of the sites were eliminated because they did not have sufficient acreage or were not for sale. Two of the sites, while large enough and located on the western side of La. Hwy. 1, had more homes located in a 1.22 mile "worst-case" radius than the selected site. Considering the selection criteria and community input, Shintech chose the 275-acre tract as the best location for the proposed facility.
It is undisputed that the parishes of Iberville and West Baton Rouge are among five Louisiana parishes classified as "serious non-attainment" for ozone. In these parishes, the emissions of volatile organic compounds (VOCs) are regulated because VOCs contribute to the formation of ozone. In its environmental assessment statement, Shintech admitted that one of the most significant potential adverse environmental impact from the project related to the emission of VOCs by its proposed facility. However, Shintech stated, the potential adverse impact had been avoided by Dow's voluntary agreement to reduce its VOC emissions to off-set Shintech's emission contributions in the area.
DEQ received written and oral comments during a public hearing on the permit application and throughout the comment period, which was extended by DEQ. Thereafter, on October 15, 1999, DEQ granted Shintech the permit. In lengthy written reasons for decision, with respect to the selection of the site for the facility, DEQ found that there were no alternative sites that would offer more protection to the environment than the proposed site without unduly curtailing non-environmental benefits. Specifically, DEQ found that Shintech's proposed facility would not cause any air quality impacts that would adversely affect human health or the environment in Iberville and West Baton Rouge Parishes. DEQ stressed that there would be no net increase in VOC emissions from the project area due to an acceleration of voluntary VOC emission reductions from Dow. Furthermore, DEQ observed, Shintech's facility did not qualify as a "major stationary source" of VOCs, and therefore, no offsets were even required by the air regulations. DEQ also noted that the project would increase personal income for Louisiana residents and increase tax revenues. The benefits of the project, DEQ concluded, far outweighed the minor environmental impact costs of the facility. In granting the permit, DEQ ultimately found that the proposed project minimized or avoided potential and real adverse environmental impacts to the maximum extent possible and that the social and economic benefits of the proposed facility outweighed any adverse environmental impacts therefrom.
On November 15, 1999, members of various environmental groups and residents of West Baton Rouge and Iberville Parishes (hereinafter referred to as appellants) filed this action against DEQ seeking judicial review of DEQ's permit decision. Dow intervened in the lawsuit.
Appellants advanced three principal arguments in the trial court. First, they complained that Shintech's site study was fundamentally flawed because it was impermissibly limited to a single geographic area around the Dow facility. Because of Shintech's failure to conduct a meaningful site selection study, they argued, DEQ could not fulfill its duty to fully assess the environmental impacts of the proposed facility. Secondly, appellants argued that the facility would not avoid adverse environmental effects to the maximum extent possible because the plant would be located in an ozone non-attainment area. Lastly, they asserted that DEQ inappropriately concluded that the social and economic benefits of the facility outweighed the adverse environmental impact costs.
*24 After considering the evidence and the parties' arguments, the trial court upheld DEQ's action in granting the permit. This appeal followed.

MOTIONS
We first dispose of several motions filed by the parties in this case. Appellants filed a motion to include new evidence as exhibits to their brief that was not available at the time DEQ rendered its permit decision or when the trial court rendered its decision. Specifically, they sought to introduce in this court a letter from Louisiana Governor Mike Foster regarding a capital outlay appropriations bill of the regular 2000 legislative session wherein the Governor vetoed funding for an evacuation route sought by appellants for the Shintech facility. This evidence, they urged, rebutted the appellees' assertion before DEQ that an evacuation route was forthcoming. They also sought to introduce two newspaper articles appearing in March and April of 2001 in which Dow stated that health studies had been conducted in connection with the use of VCM at its Midland, Michigan facility, which they insisted rebutted certain statements regarding the adverse health effects of the proposed facility made by Shintech during the permitting process. Additionally, appellants sought to introduce an article discussing an emergency situation prompting the usage of the existing evacuation route and its attendant problems.
Appellees, DEQ and Shintech, filed motions to strike portions of appellants' brief referring to those exhibits. Alternatively, Shintech filed a motion asking this court to consider new evidence.
We deny both motions to introduce new evidence for the first time in this appeal. This court may not supplement the record on appeal with evidence. To do so would constitute the taking of evidence and the exercise of original jurisdiction in a matter in which this court is not vested with authority. MMR-Radon Constructors, Inc. v. Continental Insurance Company, 97-0159, p. 6 (La.App. 1 Cir. 3/3/98), 714 So.2d 1, 4, writ denied, 98-1485 (La.9/4/98), 721 So.2d 915. While this court does have the power under La. C.C.P. art. 2164 to remand a case for the introduction of additional evidence if grave injustice may result from the failure to do so, this court will not do so where a remedy is available. Id. La. R.S. 30:2023(B)(1)(2) provides that DEQ may revoke or modify a permit for cause at any time. Appellants may petition DEQ to reopen the permit for sufficient cause. LAC 33:III.59. DEQ is the appropriate forum for the presentation of new evidence in this case. As such, appellants' remedy is not to have the record supplemented on appeal, but to petition DEQ to reopen the permit to consider the new evidence. Should DEQ fail to do so, appellants could then seek judicial review. In accordance with our ruling on appellants' motion, we grant appellees' motions to strike those portions of appellants' brief that refer to matters outside the appellate record.
Next, we examine appellants' motion to take judicial notice of several documents attached to its motion. They ask this court to take judicial notice of a joint motion filed by DEQ and the United States Environmental Protection Agency (EPA) in a federal court environmental action, a remand order by the federal court, and a letter from DEQ assistant secretary to an EPA official. The motion for judicial notice focuses on statements in the joint motion and the letter acknowledging differences between DEQ's regulations concerning emission reduction credits (ERC) banking and EPA's policy concerning such banking.
*25 Appellants urge that one of the issues they raised in the instant litigation was whether DEQ abused its discretion in allowing the construction of a new VOC pollution source in an area burdened with ozone non-attainment. They contend that the documents demonstrate an admission by DEQ that its ERC banking was flawed and ask this court to take judicial notice of that fact.
La. C.E. arts. 201 and 202 set forth those circumstances under which a court may take judicial notice of adjudicative facts or legal matters. With respect to "facts," the noticed fact must be one not subject to reasonable dispute because it is either (1) generally known within the territorial jurisdiction of the court, or it is (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned. La. C.E. art. 202(B) permits a court of this state to take notice of decisions of federal courts that have the effect of law.
DEQ and Shintech argue that these documents are totally irrelevant to this appeal because Louisiana's ERC banking program did not even apply in the case of the Shintech permit as Shintech is not a "major stationary source" of VOCs, and is therefore not required by law to offset its emissions with reductions of emissions at other facilities. Alternatively, they argue, even if these documents were relevant to the appeal, neither article of the Code of Evidence authorizes this court to take judicial notice of the documents.
We agree, and find that appellants' request for this court to take judicial notice of pleadings in other court proceedings and letters written by DEQ officials is merely an attempt to introduce new evidence into this proceeding. As stated before, this court may not consider evidence for the first time on appeal. Accordingly, the motion for judicial notice is denied.

JUDICIAL REVIEW OF DEQ'S PERMIT DECISION
Under Louisiana law, DEQ has a constitutional duty to act as the trustee of the environment. In Save Ourselves, Inc. v. Louisiana Environmental Control Commission, 452 So.2d 1152, 1157 (La. 1984), commonly referred to as the "IT case," the Supreme Court interpreted this constitutional mandate to impose a "rule of reasonableness," which requires DEQ to determine, before granting approval of any proposed action affecting the environment, that adverse environmental impacts have been minimized or avoided as much as possible consistently with the public welfare.
In making a decision, DEQ is required to make basic findings supported by the evidence and ultimate findings which flow from the basic findings, and must articulate a rational connection between the facts found and the order issued. Save Ourselves, Inc., 452 So.2d at 1159. Based on the Save Ourselves decision, it has been held that DEQ's written findings of fact and reasons for decision must address whether (1) the potential and real adverse environmental effects of the proposed project have been avoided to the maximum extent possible; (2) a cost-benefit analysis of the environmental impact costs balanced against the social and economic benefits of the project demonstrate that the latter outweighs the former; and (3) there are alternative projects or alternative sites or mitigating measures that would offer more protection to the environment than the proposed project without unduly curtailing non-environmental benefits to the extent applicable. In re Belle Company, L.L.C., XXXX-XXXX, pp. 16-17 (La.App. 1 Cir. 6/27/01), 809 So.2d 225, 238; In re Rubicon, Inc., 95-0108, p. 12 *26 (La.App. 1 Cir. 2/14/96), 670 So.2d 475, 483.
On review, an appellate court should not reverse a substantive decision of DEQ on the merits unless it can be shown that the Secretary of DEQ was arbitrary or clearly gave insufficient weight to environmental protection in balancing costs and benefits of the proposed action. In re BASF Corporation's Exemption Permit, 99-0302, p. 9 (La.App. 1 Cir. 7/31/00), 765 So.2d 1171, 1178.
In this appeal, appellants basically assert the same arguments made in the trial court. They urge that Shintech's site study was impermissibly limited and inadequate because Shintech looked only at sites in the immediate geographical proximity to the Dow plant, and made its site selection solely on economic factors, rather than environmental considerations. Because of the flawed nature of the study, they posit, DEQ could not fulfill its legal obligation to consider whether other sites would offer more protection to the environment. Secondly, appellants' argue that DEQ did not conduct a proper cost-benefit analysis because it failed to find that the environmental costs outweighed the social and economic benefits of the proposed facility.
The trial court, in its written reasons for judgment, thoroughly discussed the multitude of arguments regarding appellants' challenges to the propriety of DEQ's decision to grant the permit. We adopt the trial court's discussion of the arguments as our own, and attach a copy of the trial court's written reasons to this opinion.
After reviewing the record, and upon considering the arguments advanced by the parties, we find that appellants failed to demonstrate that DEQ acted arbitrarily or failed to give sufficient weight to environmental concerns in balancing the costs and benefits of the Shintech facility. Rather, the record demonstrates that DEQ reasonably determined that any adverse environmental impacts had been minimized or avoided as much as possible consistent with the public welfare. Therefore, this court may not reverse DEQ's decision to grant the permit.

CONCLUSION
Accordingly, the judgment appealed from is affirmed. All costs of this appeal are assessed to appellants.
MOTIONS TO INTRODUCE NEW EVIDENCE DENIED; MOTION TO STRIKE GRANTED; MOTION TO TAKE JUDICIAL NOTICE DENIED, AFFIRMED.

ATTACHMENT

IN THE MATTER OF SHINTECH,

PROCEEDINGS FOR JUDICIAL REVIEW UNDER THE LOUISIANA ENVIRONMENTAL QUALITY ACT (La. R.S. 30:2001 et seq.)

NUMBER 466,616 DIV. N

19TH JUDICIAL DISTRICT COURT PARISH OF EAST BATON ROUGE STATE OF LOUISIANA

WRITTEN REASONS FOR JUDGMENT
This matter came on for hearing on appellants' Petition for Judicial Review of the October 15, 1999 decision of the Secretary of the Office of Environmental Services, Louisiana Department of Environmental Quality, on the application by Shintech, Inc., for a Part 70 operating permit/state preconstruction air permit, which was granted. Present in court were counsel for appellees Shintech, Inc., Robert E. Holden, Dow Chemical Company, *27 John Gray and Steven Levine, and Department of Environmental Quality, Louis Buatt. Also present in court was counsel for appellants Elizabeth D. Avants, et al, Joseph J. McKernan and Scott Brady.
Oral arguments were had and additional time was given to submit closing remarks in the form of post-hearing memorandum. Upon the submission of the memorandum, the case is now ready for decision.
The permit granted to Shintech, Inc. (hereinafter "Shintech") by the Office of Environmental Services authorizes the construction and operation of a new polyvinyl chloride manufacturing facility in Iberville and West Baton Rouge Parishes, near Addis, Louisiana. Shintech has begun construction of this new facility that will manufacture polyvinyl chloride (hereinafter "PVC"), a plastic material used to make many common consumer and industrial products.
Shintech believes that demand for PVC will continue to grow, at an average rate of three to five percent (3%-5%) per year, and Shintech's only other PVC plant, located in Freeport, Texas, cannot be expanded to meet the additional demand expected.
The primary raw material to be used by Shintech to produce PVC is vinyl chloride monomer (hereinafter "VCM"). Shintech calculates it will need approximately 1.3 billion pounds of VCM per year to meet its production plans. The Dow Chemical Company (hereinafter "Dow") is the only merchant supplier of VCM in the United States that has the capacity to provide such a large amount of VCM. Shintech's new facility will be built across the road from Dow's Plaquemine facility, which will provide VCM via an underground pipeline.
Because the new facility will emit air pollutants, Shintech was required to obtain from the Department of Environmental Quality (hereinafter "DEQ") a "Part 70" operating permit under Louisiana's Air Quality Regulations before commencing construction. These regulations have been approved by the United States Environmental Protection Agency (hereinafter "EPA") to implement Title V of the Clean Air Act Amendments of 1990, and EPA's own regulations at 40 CFR Part 70.
Shintech submitted its permit application to DEQ on March 12, 1999. After the official public comment period, which was extended by DEQ, review of the permit application, and consideration of all public comments, DEQ assistant secretary Gus Von Bodungen decided to issue the Part 70 permit to Shintech.
The Louisiana Environmental Quality Act (hereinafter "LEQA") establishes the standard of review in permit appeals by cross-reference to the Louisiana Administrative Procedure Act (hereinafter "APA"), La. R.S. 49:964(C), (F) and (G). La. R.S. 30:2050.21F. The APA provides that judicial review proceedings shall be decided on the administrative record, on briefs and oral argument, but without trial. The APA provides that the standard for review allows a court to reverse an agency decision found to be:
(1) in violation of constitutional or statutory provisions;
(2) in excess of statutory authority of the agency;
(3) made upon unlawful procedure;
(4) affected by other error of law;
(5) arbitrary and capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) not supported or sustained by a preponderance of the evidence as determined *28 by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by preponderance of the evidence based on its own evaluation of the record reviewed in its entirety upon judicial review.
Article IX of the Louisiana Constitution, formulated in 1974, contains the following public trust mandate:
"The natural resources of the state, including the air and water, and the healthful, scenic, historic, and aesthetic quality of the environment shall be protected, conserved, and replenished insofar as possible and consistent with the health, safety and welfare of the people. The legislature shall enact laws to implement this policy."
The LEQA, La. R.S. 30:2001, et seq., is the basic law enacted by the Legislature to implement the Public Trust policy. The Shintech air permit has been issued under the Air Control Law within the LEQA and the regulations promulgated thereunder.
In Save Ourselves, Inc. v. Louisiana Environmental Control Commission, 452 So.2d 1152 (La.1984), the Louisiana Supreme Court said the following about Article IX, Section 1 of the Louisiana Constitution, at page 1157 of its opinion:
"* * * This is a rule of reasonableness which requires an agency or official, before granting approval of a proposed action affecting the environment, to determine that adverse environmental impacts have been minimized or avoided as much as possible consistently with public welfare. Thus, the constitution does not establish environmental protection as an exclusive goal, but requires a balancing process in which environmental costs and benefits must be given careful consideration along with economic, social and other factors."
In the Save Ourselves decision (also known as the "IT decision"), the Supreme Court overturned the hazardous waste permit issued to IT Corporation for a proposed commercial hazardous waste incinerator. Save Ourselves set forth a criteria for agencies issuing environmental permits, which has come to be known as the "IT factors". This criteria was stated as three questions in In re Rubicon Inc., 670 So.2d 475 (La.App. 1 Cir.1996) (en banc), 670 So.2d 475, at page 483 and footnote 8:
"* * * 1) the potential and real adverse environmental effects of the proposed project have been avoided to the maximum extent possible; 2) a cost benefit analysis of the environmental impact costs balanced against the social and economic benefits of the project demonstrate that the latter outweighs the former; and 3) there are alternative projects or alternative sites or mitigating measures which would offer more protection to the environment than the proposed project without unduly curtailing non-environmental benefits to the extent applicable."
In addition, according to Rubicon, a DEQ decision will be more in conformity with the mandate of establishing the ultimate decision rationally flowed from the facts if it at least contains:
1. a general recitation of the facts as presented by all sides;
2. a basic finding of facts as supported by the record;
3. a response to all reasonable public comments;
4. a conclusion or conclusions on all issues raised which rationally support the order issued; and

*29 5. any and all other matters which rationally support the DEQ's decision. Id., 670 So.2d 475.
The appellants make three principal arguments for the remand of the Shintech air permit: (1) the site selection process considered only a limited number of sites around the Dow Plaquemine facility, which includes the argument that the selection of the PVC-only plant located near Dow was an economic, not an environmental decision, (2) the Addis plant will not avoid adverse environmental effects to the maximum extent possible because the plant will be located in an ozone non-attainment area, and (3) DEQ inappropriately concluded that the social and economic benefits of the facility outweighed the adverse environmental impact costs, which includes the argument that the alternative access road to be built at the request of nearby residents has costs and issues that must be considered in the Shintech permitting process.
Appellants contend that Shintech's alternative site study was impermissibly limited and inadequate. Appellants argue that DEQ, therefore, could not, and did not, fulfill their legal obligation to consider whether alternative projects or alternate sites would offer more protection to the environment without unduly curtailing the non-environmental benefits.
Appellants cite In the Matter of Browning-Ferris Industries Petit Bois Landfill, 93-2050 (La.App. 1 Cir.1995), 657 So.2d 633, writ denied, 663 So.2d 742 (La. 1995); In the Matter of American Waste & Pollution Control Company, 633 So.2d 188 (La.App. 1 Cir.1993), affirmed, 93-3163 (La.1994), 642 So.2d 1258; and In the Matter of Supplemental Fuels, Inc., 94-1596 (La.App. 1 Cir.1995), 656 So.2d 29, in support of their position that the alternative sites considered were impermissibly limited geographically to an area immediately surrounding the Dow facility.
Specifically, appellants argue that the site selection was flawed because the study was limited to a geographic area immediately surrounding the Dow facility, sites were eliminated solely for economic reasons, and all sites considered were in a serious non-attainment area for ozone. Furthermore, appellants contend that of the eight (8) sites considered, two (2) were not available for purchase, and three (3) were too small in size. Finally, appellants contend that Shintech and DEQ's argument that it is safer to locate in Addis across from Dow because it will decrease the distance of shipping vinyl chloride monomer by rail is not based on environmental concerns, but actually is motivated by economic reasons. Appellants argue that Shintech and Dow prefer to locate in Addis because it costs less to pipe vinyl chloride monomer across the street to the Dow facility opposed to other modes of shipping, such as by railcar or barge.
Appellees cite Blackett v. Louisiana Department of Environmental Quality, 506 So.2d 749 (La.App. 1 Cir.1987) in support of the alternative sites analysis used by DEQ. Specifically, appellees argue that in Blackett, the First Circuit held that an alternative sites analysis may be limited to a specific geographical area where the geographical area is suitable for the project.
Appellees contend that in this case, eight (8) sites were considered. All eight (8) sites were in the same non-attainment area for ozone; each site featured similar soil characteristics; there were no known archeological areas within any of the sites; and, no wetlands existed on any of the sites, nor were there any rare, threatened, or endangered species or critical habitats present on any of the sites. Furthermore, appellees contend that the eight (8) sites were examined for the location *30 of residences within a 1.22 mile "worst-case scenario" impact radius under EPA's Risk Management Prevention Plan. Appellees argue that sites one (1), three (3), six (6), and eight (8) were ruled out because they were too small or not for sale. Sites two (2), four (4) and five (5) were left for consideration. Appellees argue that site two (2), the chosen site, only had six (6) residences within the impact radius, as compared to more than twenty-five (25) residences for sites four (4) and five (5).
Appellees argue that site two (2) was selected because it was the best of the three available sites meeting all of the siting criteria. Furthermore, appellees contend that site two (2) minimizes the number of residences within the "worst-case" impact radius. DEQ concurred with Shintech's selection of site two (2) and determined that no alternative sites would offer more protection to the environment than the proposed site without unduly curtailing nonenvironmental benefits.
Appellees argue that where an alternative sites study is arbitrarily limited to a geographic area and all of the sites considered in that area are unsuitable for the proposed project, the alternative sites study is flawed and does not meet the requirements of the Louisiana Constitution, Article IX, Section One and Save Ourselves. However, appellees contend this is applicable only where all of the sites are unsuitable, which appellees contend was not the case here. In contrast, appellees contend all eight sites evaluated in the Shintech matter were suitable for the proposed project considering only environmental factors. Appellees cite Blackett in support of there contention, which held it is permissible to consider sites located in close proximity to each other, where several of the sites are suitable for the proposed project. Thus, appellees contend that given the nature of the project, considering only sites close to the Dow facility was appropriate under applicable legal standards.
Appellants argue that DEQ should not have permitted Shintech's air emissions because the facility is located in an area which had not attained compliance with ambient air quality standards for ozone, and Shintech's permitted emissions of volatile organic compounds (hereinafter "VOCs") are ozone precursors. Appellants contend that the proposed Shintech facility would add to the amount of air emissions in that community by 96,000 pounds per year, a single annual increase of over ten (10%) percent.
Appellants argue that Shintech proposed, and DEQ accepted, that to construct and operate this additional source of VOCs in an ozone non-attainment area, Dow will voluntarily reduce its emissions. Appellants contend that it is an abuse of discretion for the DEQ to allow this tradeoff. Appellants argue that Dow and other existing facilities should already be reducing their emissions in this area of nonattainment. Appellants contend that granting this permit will only increase, not avoid, adverse environmental effects.
Appellants argue that Shintech should increase production of PVC at its Freeport Texas facility, as an alternative to building a new plant in Louisiana. Appellants argue that the Freeport Texas facility currently ships PVC resin through Iberville/West Baton Rouge Parishes to the customer base in the eastern and southeastern United States. Appellants contend that this is an alternative project that would avoid the real and potential adverse environmental impacts to the maximum extent possible.
Under Louisiana's Air Quality Regulations, a source of VOCs in a serious ozone *31 non-attainment area is classified as "major" only if it emits, or has the potential to emit, fifty (50) tons of VOCs or more per year. Louisiana Administrative Code (LAC) 33:III 504.G, definition of "Major Stationary Source". The Shintech facility is permitted to emit 47.8 tons of VOCs per year, and therefore appellees contend it is not a major stationary source. Appellees argue that the permit could allow the emission of the additional VOCs without requiring offsetting reductions by other facilities. However, appellees argue that Shintech's emissions will be offset by voluntary reductions in VOC emissions by Dow, at its Plaquemine facility. Therefore, appellees contend that the Shintech project will in no way impede or delay Louisiana's progress toward bringing the Baton Rouge area into attainment with the ozone National Ambient Air Quality Standard.
Appellees argue that appellants would have the DEQ deny any permit for any activity that has any adverse environmental effect, and ignore completely the economic, social and other benefits of the project. Appellees argue that with specific regard to the ozone standard attainment, as pointed out above, the reductions of VOC emissions by Dow completely offset the new VOC emissions by Shintech, resulting in no net increase in VOC emissions.
Appellees further contend that all Louisiana ambient air standards for toxics are met at the property lines of the Shintech and Dow facilities. Appellees argue that there is nothing in the record indicating that the off-site concentration of vinyl chloride, or any other pollutant, will violate the ambient air standards.
Appellees argue that considering the Freeport Texas facility is not a feasible alternative. Appellees contend that the Freeport plant has reached its optimum size. Appellees argue that reliance on a single source of raw material would leave Shintech extremely vulnerable to loss of production due to unforeseen weather conditions or raw material shortage. Appellees argue that geographic diversification is important to Shintech so that it can reduce the cost of shipping its product to its customers in the Eastern United States. Therefore, Appellees contend that increasing the production at the Freeport Texas facility, instead of building the new plant near Addis, would unduly curtail non-environmental benefits.
Appellants contend DEQ inappropriately concluded that the social and economic benefits of the facility outweighed the adverse environmental impact costs. Appellants argue that the cost to the State for constructing a new road, which will serve as an additional evacuation route, is not outweighed by the benefit; because the evacuation route will bring people closer to the Shintech facility as they evacuate. Appellants argue that the projected cost of the proposed evacuation road is over $5.4 million for construction, plus the costs of right-of-way acquisition and continued maintenance, all to be paid by the taxpayers of Louisiana.
Appellants contend that the road committee was more interested in enhancing and stimulating future growth and development than in the welfare and safety of the residents who need an evacuation route. Appellants contend that the completion of a safe and effective evacuation route should be a prerequisite to the issuance of any permit. Instead, appellants contend the construction of the evacuation route is contingent upon the permitting and operation of the Shintech facility.
Appellees contend that the record shows that the new road will connect Louisiana Highways 1148 and 77, a route which appellees *32 contend clearly runs away from the Shintech facility, which is bounded on one side by La. 1148. Appellees also contend that the cost to the state of constructing the road is not an "environmental impact cost," the only kind relevant to DEQ's "IT" analysis. On the other hand, appellees argue that the Legislature did consider these costs, as well as the benefits the road would provide to the state and to the local community, and apparently concluded that the benefits justified the costs of constructing the road. Appellees cite Act 20 of the 1999 Regular Legislative Session, the state's capital outlay bill for fiscal year 1999-2000, which appropriated $5.4 million in funding for planning and construction of the new road, to support their contention. Appellees argue the act contains no language imposing any condition on the expenditure of those funds, which appellees contend refutes appellants' claim that the construction of the road is contingent upon the permitting and construction of the Shintech facility.
Appellants argue that DEQ failed to consider costs to the state for violations of ambient air levels because of increased emissions in an area of ozone non-attainment. Appellees counter this contention with the previous argument that the record shows that there will be no such violations, thus there are no costs to consider.
Appellants argue that DEQ failed to consider costs with monitoring and enforcement activities at the proposed facility. Appellees contend that there will be no net costs associated with these items, because DEQ regulations require the payment of permit fees that cover the costs to DEQ of monitoring and enforcement of the permitted facility. LAC 33:III Chapter 2, Section 201.
Appellants argue that DEQ failed to consider the costs to the state and parishes to improve and maintain roadways as a result of an expected increase in traffic, and the cost of the impact of surrounding property values. Appellees contend that these are not environmental impact costs, and DEQ has neither a duty nor the expertise to analyze them. Even so, appellees contend the record reflects the impact is minimal.
Appellees argue that the traffic on area roads is predicted to increase by only about 0.3% as a result of the operation of the new facility. Appellees contend this will not significantly raise maintenance cost to the State. Appellees argue that the record indicates that most of the Shintech site has been zoned for industrial use since 1996, and that substantially all of the current residents in the area moved into the area years later. Thus, appellees contend that the effect on property values would be minimal, since the current property values already reflect the industrialized character of the area. Furthermore, appellees contend that any potential negative effects on the aesthetic quality of the area will be mitigated by a 200-foot wide greenbelt around the facility, and a vegetated berm along the western boundary. Additionally, appellees argue that Dow will construct a greenbelt at least 300-feet wide along the southern boundary of a tract of land Dow owns, just south of Shintech and just north of the Green Acres and Homestead Drive areas.
Appellants argue that DEQ should have considered the potential health effects of the facility on the workers employed there. Appellants contend that this issue was raised several times in oral and written comments, and evidence was provided to the DEQ which contradicted Shintech's claim that there are no known health risks from exposure to PVC. Appellants contend that the DEQ ignored Shintech's misrepresentations of the facts and science, and *33 ignored the evidence submitted by the public. Appellants contend this is an abuse of discretion and a dereliction of duty as the primary trustee of Louisiana's environment.
Appellees contend that DEQ is statutorily forbidden to regulate such matters. The Louisiana Environmental Quality Act provides:
"Nothing in this law shall be deemed to grant to the secretary [of DEQ] any jurisdiction or authority to make any rule, regulation, recommendations, or determination with respect to any of the following... (i) Air conditions existing solely within the property boundaries of commercial and industrial plants, works or shops. La. R.S. 30:2054(B)(2)(b)(k)."
Appellees argue that worker health and safety is protected by the regulatory program administered by OSHA. Appellees contend it would not only be contrary to law, but also beyond DEQ's technical expertise, for DEQ to invade the regulatory province of OSHA and attempt to make determinations as to the potential effects of air emissions on worker health.
Appellants argue there is no "economic benefit" in Shintech's promise of jobs. In contrast, appellants contend that a prominent organization that works with the unemployed and homeless of the surrounding Baton Rouge area informed the Secretary of the DEQ that chemical plants, such as the proposed Shintech facility, have not been a source of economic development which benefits all citizens. Appellants contend DEQ did not respond to this concern.
Appellees argue that the DEQ described the following economic benefits expected to be generated by the construction phase of the Shintech project: (1) $413 million in new spending in the local economy; (2) 4,411 local jobs; (3) $92.4 million in income for Louisiana residents; and (4) $7.5 million in new tax revenues to state and local governments. Appellees argue that DEQ also describes the following economic benefits expected to result from the operation of the new facility, once construction is complete: (1) $541.5 million in economic impact annually; (2) 4,121 permanent new jobs in the local economy; (3) $92.4 million in new income for Louisiana residents; and (4) $8.7 million in new tax revenue to state and local governments.
Appellees argue that it is insignificant if the project may not benefit all citizens. Appellees contend no project can benefit all citizens. However, appellees argue that this is not a reason to deny a permit.
The Court listened to arguments of counsel, considered the well written briefs submitted by all parties, and reviewed the record of the underlying proceeding. The Court finds and believes that the Department of Environmental Quality, specifically DEQ assistant secretary Gus Von Bodungen, did not abuse its discretion, act contrary to law, nor was it arbitrary and capricious in granting the Part 70 permit to Shintech. There is a rational basis, supported by the findings of fact in the record, for the ultimate decision by DEQ to grant the Part 70 permit to Shintech. Therefore, the Court upholds the decision by DEQ and its assistant secretary.
Judgment to be signed accordingly.
Baton Rouge, Louisiana, this 19th day of June, 2000.
/s/ Jewel Welch
JUDGE
NOTES
[*] Judge William F. Kline, Jr., Retired, serving Pro Tempore by special appointment of the Louisiana Supreme Court.